Moyers *v.* Graham.

## GILBERT MOYERS *v.* JOSEPH GRAHAM.

1. CONTRACT. *May be rescinded. When.* If a party to an executory contract on mutual promises become incapable, except by the act of God or the public enemy, of performing his part of the contract, the consideration of the promises of the other party necessarily fails, and he may rescind the contract, and the party failing to perform can recover nothing on the contract.

2. POWER OF ATTORNEY. *May be revoked. When. Damages.* A power of attorney, although in terms irrevocable, may be revoked, subject to liability in damages for a breach of any contract therein, but if the revocation be occasioned by the failure of the attorney to perform, there is no ground for damages.

3. ATTORNEY. *Effect of being disbarred.* Where an attorney employed to prosecute a claim before the Treasury Department of the United States, under a contract for compensation out of the recovery, with a lien thereon, is disbarred from practicing in the Department by an order of the Secretary of the Treasury, the client may rescind

the contract, and revoke the power of attorney authorizing the agent to act, and the subsequent revocation of the order of disbarment will not revive the relation.

4. CONTRACT. *Quantum meruit.* To recover upon a *quantum meruit,* where the party suing has violated the contract, he must show the performance of services, and that those services were of benefit to the other party.

5. EVIDENCE. *Letter.* Neither an original letter, nor a certified copy thereof, from the Commissioner of Internal Revenue, in answer to certain inquiries, is evidence of the facts therein stated.

## FROM SHELBY.

Appeal from the Chancery Court at Memphis. W. W. McDOWELL, Ch.

GEORGE GILHAM for complainant.

TAYLOR & CARROLL for defendant.

COOPER, J., delivered the opinion of the court.

On August 1, 1882, the defendant, Graham, employed the complainant to prosecute a claim on the Treasury of the United States for the excess over the taxes of land sold in 1864 for the direct tax under the act of Congress of 1862, which excess had been paid into the Treasury. The defendant agreed in writing to allow the complainant a fee of one-half of the amount collected, and that the fee should be "a lien on any draft that may be issued in payment of said claim." He also gave the complainant a power of attorney, "irrevocable," to prosecute the claim. The complainant, under the employment, proceeded to file a petition, affidavits and certificates of

title in support of the claim, as required by the rules and orders of the department. Prior to the contract of employment, on May 16, 1882, an information had been filed against the complainant in the Circuit Court of the United States for the Western District of Tennessee, where he resided, for wrongfully and illegally demanding and receiving a greater compensation than allowed by law for the prosecution of a pension claim. On February 19, 1883, the Secretary of the Treasury issued an order based upon a similar order of the Interior Department, directing that the complainant should not thereafter be recognized as an attorney in any claim or matter before the Treasury Department. On April 23, 1883, this order was rescinded, because, as recited on the face of the rescinding order, the Secretary of the Interior had so modified his disbarring order as to confine its action to the Pension Office for purposes of enquiry. In the meantime, on March 28, 1883, the defendant, Graham, by a power of attorney to his co-defendant, R. M. Thompson, revoked his previous power of attorney to the complainant, and appointed Thompson as his attorney to prosecute the claim, and stating that he had changed his attorney for the reason that the complainant was under indictment before the United States Circuit Court. The change of attorneys was recognized and sanctioned by the department, the claim being acted upon and passed under the proceedings instituted by Thompson as attorney, and the warrant for the amount found due was delivered to him. It does not appear that complainant had notice of the revocation of his

power and the appointment of Thompson until shortly before the issuance of the warrant, and he had, after the rescission of the order of disbarment, filed some additional or amended evidence with the department. This suit was commenced August 1, 1883, to impound the warrant in the hands of Thompson upon the ground of the lien given thereon in the original agreement, and to recover the one-half of the amount collected, or, if this relief could not be had, to recover a *quantum meruit* for services. The chancellor, on final hearing, dismissed the bill, and the Referees report in favor of affirmance. The complainant excepts.

If a party to an executory contract upon mutual promises become incapable, except by the act of God or the public enemy, of performing his part of the contract, the consideration of the promises of the other party necessarily fails, and he has the right to rescind: Bishop on Con., sec. 674. In such a case the party failing to perform can recover nothing on the contract: *Id.*, sec. 681. A power of attorney, although in terms irrevocable, may nevertheless be revoked, subject to damages for the breach of any contract therein. And if the revocation grew out of the failure of the attorney to perform, there is no more ground for damages than in the case of a justifiable rescission: *Carver's case*, 7 Court of Claims, 499; *Dodge* v. *Schelt*, 14 Rep., 39. After a rescission or revocation there can be no resumption of the relation except by consent.

The consideration of the employment of the complainant by the defendant was the continuous performance of such services as were required in the pros-

ecution of the claim. The contract was one of mutual promises and executory. The complainant having become incapable of prosecuting the claim by reason of his disbarment, the consideration of the defendant's promises necessarily failed, and the defendant might lawfully rescind the contract and revoke the authority of the complainant. This was what was in effect done by him, while the complainant was thus disbarred. And after it was done, the relation between the parties could not, upon general principles, be resumed except by mutual consent. Moreover, the rules of the Treasury Department expressly provide that, after disbarment, the attorney, if the order of disbarment be revoked, can only resume his position in any case with the consent of the applicant. *Prima facie*, therefore, the complainant has no right of action on the contract.

It is argued on his behalf that he had no notice of the revocation until after the order of disbarment had been revoked, and after he had filed additional evidence in the case. The bill alleges that about the time the claim was ready for allowance, he, complainant, was notified by the department that the defendant had revoked his authority, and appointed another attorney. But it does not allege that complainant was not previously made aware of the fact. He must have known that his disbarment necessarily put an end to his power to perform the contract, and it was his duty, as practicing attorney before the department, to know that after the disbarment he could not, under the rules of the department, upon a revocation of the

order, resume his position in any case without the consent of the applicant. He should, consequently, as soon as the order was revoked, have applied to the defendant, Graham, for his consent to the further prosecution of the suit, and if, without such consent, he chose to perform services in the matter, it was at the risk of their being subsequently ratified.

It is also said that the power of attorney to Thompson gives as the reason for the change that the complainant was under indictment in the Circuit Court of the United States, and not the fact that the complainant was then disbarred, and that he could not subsequently prosecute the case or be recognized by the department until he had obtained the defendant's consent to his renewal of the relation. If he had applied either to the defendant or the department, he would have learned the true state of facts, if, indeed, he was ignorant on the subject.

Strictly speaking, as we have seen, the complainant, having first violated the contract by becoming incapable of performing it, could recover nothing. And the only ground for equitable relief as compensation for services, would be to show that beneficial services were actually rendered. The bill assumes, rather than asserts, that the services performed were of benefit to the defendant, because the papers filed by the complainant were used in acting upon the claim. The defendants in their answer deny the charge, and say the claim was prosecuted, and all the proof taken and filed by Thompson. The proof of complainant tends to show that some papers were prepared

and filed by him, but it also shows that the additional papers presented by him after the revocation of disbarment were to supply defects in those previously filed. And the complainant fails to prove that the papers prepared and filed by him were in fact used in adjudging the claim. There is in the transcript the certified copy of a letter to Thompson from the Commissioner of Internal Revenue, which states that the case was tried exclusively upon the papers furnished by Thompson, and the records of the office. This evidence was objected to, because it was merely a copy of a letter taken from the letter-book of the department, and should have been excluded. The act of Congress makes copies of any books, records, papers or documents in any of the executive departments, authenticated under the seal of the department, admissible in evidence " equally with the originals thereof." But the original letter, which merely undertook to answer certain inquiries, would not have been evidence of the facts therein stated, much less an office copy thereof: 1 Greenl. Ev., sec. 498. But we think the burden was upon the complainant to make out his case, and to prove that what he had done was of service to the defendant. And he should also have shown, what he has failed to do, what those services were worth.

The report of the Referees must be confirmed, and the decree below affirmed with costs.

A like decree will be severally entered in the cases of Gilbert Moyers against E. A. Benson and others, and Gilbert Moyers against G. M. Lewis and others.

The three cases were heard together, and turn upon the same questions. The power of attorney to Thompson, revoking the previous power to the complainant, was, it is true, executed by Benson one day after the order disbarring the complainant had been revoked. But, as we have seen, the disbarment itself terminated the relation between Benson and complainant, and that relation could not be renewed except with Benson's consent. It is true also that the power of attorney by Lewis to Thompson was executed about two months before the order of disbarment of the complainant, but it does not appear that it was filed with the department, and actually used until after the disbarment.