## LEBOVITZ v. PORTER.—252 S. W. (2d) 144.

Western Division at Jackson.   June 19, 1952.

Petition for Certiorari denied by Supreme Court, October 10, 1952.

150

W. G. Cavett, of Memphis, for appellant.

Irving M. Strauch, of Memphis, for appellee.

SWEPSTON, J.   This is an appeal by Dr. Porter, defendant, from an adverse decree of the Chancellor in a suit tried on oral testimony on written stipulation filed.

The bill sought specific performance of an alleged contract for the sale of a picture show in West Memphis, Arkansas, and in the alternative for damages for breach of contract, and for "such other and further relief as the facts will justify".

The Chancellor refused specific performance but entered a money judgment for damages.

The bill alleged that Porter was and is the owner in fact of the property, although the legal title was held by Cianciola; that said picture show was at the date of the contract under padlock of the Arkansas Revenue Agent

for delinquent taxes. There was exhibited to the bill the following contract:

"Sales Agreement

"This agreement Made and entered into this January 20, 1951, by and between David Lebovitz, hereinafter referred to as Party of the First Part, and Frank Cianciola and Dr. Arthur Porter, hereinafter referred to as Parties of the Second Part.

"Witnesseth:

"The Second Parties agree to sell to the First Party the land, good will and equipment of the Harlem Theatre of West Memphis, Arkansas for a total purchase price of Fifty-six Thousand ($56,000.00) Dollars, payable Ten Thousand ($10,000) Dollars cash and the balance after the paying of Federal taxes and first mortgage loans to be paid at the rate of Six Thousand ($6,000.00) Dollars a year at four (4%) percent interest; Second Parties agree to give the First Party proper deeds, bills of sale, etc., to perfect this agreement at the time of the closing of same and it is further agreed that commencing with now the First Party in consideration of advancing the present Federal tax in the sum of Twenty-two Hundred and Ten ($2210.00) Dollars is to take over, operate, and own the theatre until the final papers are signed. This payment is to be applied on the purchase price and the First Party is to remain in complete control of the theatre during the interim.

"Witness the signature of the Parties this January 20, 1951.

"S/ Dave Lebovitz
"First Party

"S/ Arthur R. Porter, Jr.
"Second Parties

Porter demurred to the bill on the ground that the contract shows on its face it was to be signed by Cianciola, which had not been done, and was therefore an incomplete instrument and not enforceable. The demurrer was overruled and Porter answered denying he was the owner in fact and denying he owed complainant damages for the alleged breach of contract.

On the hearing neither Porter nor Cianciola testified, but, complainant, his brother, who was his partner, and their auditor did testify.

It developed some time after the trade was made that the legal title was in Cianciola, encumbered by a first mortgage to an insurance company and a second mortgage of $147,000 to Dr. Porter. Complainant was unable to prove that Porter was the owner in fact, but the proof is clear that Porter represented that he alone was the owner and would convey complainant a good title. This is evidenced convincingly by Ex. 3, which is as follows:

"Arthur R. Porter, Jr., M. D.
Surgery
"Medical Arts Building
"248 Madison Avenue
"Memphis 3, Tennessee
"20 January, 1951

"Collector of Internal Revenue,
"Agent in Charge,
"West Memphis, Arkansas
"Attention Mr. Fulton—
"Dear Sir:

"Mr. Dave Lebovitz has purchased the Harlem Theater from me.

"You may accept from him payment of the amusement tax which is delinquent, and permit him to open and operate the Theater pending final settlement.

      "Yours very truly

         "(s)  Arthur R. Porter, Jr.

         "Arthur R. Porter, Jr.

"ARP/k"

This letter was handed complainant by Porter at the time the contract was signed. That complainant relied on Porter's representations is evidenced by the conduct of both parties, because complainant promptly paid the delinquent tax on the theatre, opened it, paid for extensive repairs, and began operating it as owner until he was ousted July 12, 1951, by Cianciola under threats and a show of force. Porter was aware that complainant was relying upon his representations, because complainant and his lawyer, continuously besought Porter and his lawyer, Herbert Harper, to have Porter close the trade, that is, convey the title to complainant.

Complainant testified that at Harper's suggestion, he paid Harper over $1,000 to get him to have Porter close it; just on what ethical basis Harper suggested and accepted this fee is, if such was done, a complete enigma to this Court.

Complainant testified that the reason Cianciola's name was inserted in the contract was that Porter said Cianciola was the manager of the theatre; complainant said it was customary to have a manager sign, because he might have a contract for a definite time.

In any event instead of complying with his promise, Porter took the position by letter April 24, 1951 that complainant had withdrawn "your offer to purchase my second mortgage on the" theatre, and demanded

an accounting, final settlement, obviously referring to the operation of the theatre by complainant, and a "surrender to me possession of the" theatre. Complainant promptly denied ever having offered to purchase a second mortgage and again demanded performance. June 20, 1951 Porter offered "to accept $62,000 for my interest" in the theatre.

Complainant agreed to pay an additional amount but the new offer came to naught.

In an effort to settle the matter Porter requested "a financial statement covering the period of their management and control" of the theatre, and same was submitted, to many items of which Porter objected. Ex. 23, 24 & 25—Lebovitz.

This statement is in evidence in an effort by complainant to prove as damages his loss of profits in the amount of $15,000. According to the statement, complainant suffered a net loss of $3,708.82.

Included in the items of operating expense are an item of $4,456.52 salary to complainant and his brother had an item of $1,023.71 legal fee to Herbert Harper above mentioned, which will be referred to under the second assignment.

The Chancellor, of course, could not have granted specific performance, because Porter did not have the legal title and no question arises on that part. The Chancellor dismissed the bill as to Cianciola and his rights are not here involved. The decree went against Porter alone for $5,141.45 representing the sums expended in payment of debts against the theatre that had accrued prior to the time complainant took over, and for $2,415.95 representing the expense of putting the property into operable condition.

The first assignment of error goes to the overruling of the separate demurrers of Cianciola and of Porter. The former has not been mentioned because he was dismissed and has no appeal pending.

██ Porter's demurrer is not well taken, because the contract does not show on its face that neither vendor was not to be bound unless the other was.

The rule stated in the cases cited in 17 C. J. S., Contracts, Sec. 62, p. 412 is—

"* * * The question as to whether those who have signed are bound is generally to be determined by the intention and understanding of the parties at the time of the execution of the instrument. The reason for holding the instrument void is that it was intended that all the parties should execute it and that each executes it on the implied condition that it is to be executed by the others, and, therefore, that until executed by all, it is inchoate and incomplete and never takes effect as a valid contract, and this is especially true where the agreement expressly provides, or its manifest intent is, that it is not to be binding until signed. Where these reasons do not apply, it is usually held that a party who signs and delivers an instrument is bound by the obligations therein assumed, although it is not executed by all the parties named in it."

Note 83 to the text including the 1952 Supplement cite numerous cases so holding, in one of which, Stabler v. Ramsay, Del. Ch., 62 A. (2d) 464, 472, it is said:

"If some of several parties named in a contract sign it and others do not, in the absence of fraud the signers are bound unless there is an agreement or condition imposed at the time of its delivery that it

shall not take effect as to any unless all the named parties execute the instrument.''

The case of Bradley v. Howell, Tex. Civ. App., 126 S. W. (2d) 547, on which appellant relies, turns on the fact that the memorandum signed by Bradley shows on its face that he as a tenant in common was not to be bound on a lease of the land unless all other tenants in common signed. Moreover, the sole object of the suit was specific performance and the opinion, page 560 of 126 S. W. (2d), cites 58 C. J. 899-904 as to the difficulty in granting partial specific performance under such circumstances.

In the instant suit the contract does not contain any condition and puts the purchaser in immediate possession with authority to operate as owner pending the signing of the final papers, and contract was delivered, along with the letter, to purchaser.

The bill was therefore not demurrable; and when the proof came in, it was crystal clear that the delivery of the contract was unconditional and not subject to any agreement that Porter would not be bound unless Cianciola signed.

The assignment is overruled.

■ The second assignment insists that Porter should have credit for the net profits of the operation of the theatre by complainant; that instead of the net loss shown in the operating statement of $3,708.82, if the two items of salary to complainant and his brother and the fee to Harper are stricken, the profits would almost equal the amount of the judgment as rendered.

There is no merit in this because the evidence is that Porter did not own the theatre but only had a mortgage on it. Hence, on no theory could he hold complainants liable for the rents and profits.

■ The case as made out by the evidence, although not so alleged in the bill, is that Porter contracted to sell land which he did not own and had no power to make himself the owner.

Such a contract is a nullity and the purchaser is entitled to recover back the purchase money. Pipkin v. James, 20 Tenn. 325, 328.

Under the contract the amount advanced to clear the property of liens was agreed to be applied to the purchase price.

Under the proof Porter by conduct and misrepresentations caused complainant to take possession and to operate the theatre, which was in a run-down condition and had to have repairs. By the plainest principles of equitable estoppel Porter is liable to him for the expenditures made in reliance on the statements of Porter that he was the owner and had a right to put complainant in possession; moreover it enhanced the value of Porter's collateral, which from this record was insufficient to pay the mortgage held by him.

■ The second assignment presents also the proposition that the bill did not pray for damages and hence the decree is coram non judice.

We have already stated that the contrary is the fact. Even if there had been no special prayer for damages, the same could have been granted under the general prayer as the alternative to specific performance. Allum v. Stockbridge, 67 Tenn. 356.

■ We will add that although the proof did not follow the letter of the allegations of the bill, it meets the spirit of the same which in equity is sufficient. Heinz v. Fourth Nat'l Bk., Tenn. Ch. App., 48 S. W. 133, 135.

Again, the Chancellor awarded the judgment as damages for breach of contract. We put it on the basis above

stated, treating the contract as void and hence restore the parties to their former status as nearly as practical. The result is the same.

One final word, the bill is not drawn on the theory of fraud and deceit, nor did the Chancellor base his decision on that ground, nor do we. Counsel is therefore mistaken in so assuming in his brief.

All assignments are overruled and decree will be entered here accordingly.

Anderson, P. J., and Baptist, J., concur.