**In re Linda Rose MANDRELL, Debtor,**

**Linda Rose MANDRELL, Plaintiff,**

v.

**FORD MOTOR CREDIT COMPANY, Defendant.**

**Bankruptcy No. 382–02992.
Adv. No. 384–0308.**

United States Bankruptcy Court,
M.D. Tennessee.

June 21, 1985.

Jack Green, Nashville, Tenn., for plaintiff.

Kevin J. Jones, Nashville, Tenn., for defendant.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

This adversary proceeding presents the question reserved in earlier litigation in this same case:[1] What is the effect of a reaffirmation agreement made between the debtor and a creditor holding a voidable security interest? We hold that the debtor can recover payments made pursuant to a reaffirmation agreement where the security interest which served as the basis for reaffirmation is avoided by the trustee.

The following constitute findings of fact and conclusions of law. Bankruptcy Rule 7052. This is a core proceeding.[2]

### I.

The facts have been stipulated. On July 16, 1982 Linda Rose Mandrell ("debtor") purchased a new 1982 Ford Escort automobile. To procure financing the debtor granted a security interest in the car to Ford Motor Credit Company ("FMCC").

On September 13, 1982 the debtor filed a voluntary Chapter 7 petition. At the discharge hearing on December 7, 1982, the debtor tendered an application for approval of a reaffirmation agreement between the debtor and FMCC. We denied approval of the agreement pending submission of further documentation. On January 6, 1983 after provision of the missing information, the reaffirmation agreement was approved under the standards of 11 U.S.C. § 524(c).

The court-approved reaffirmation agreement continued the terms of the original contract. The debtor promised to pay $206.39 per month to retire the balance due of $9,700.33.

On August 15, 1983 the Chapter 7 trustee initiated a complaint to avoid FMCC's security interest as a preferential transfer pursuant to 11 U.S.C. § 547.[3] By memorandum and ordered entered April 24, 1984, this court held that FMCC failed to perfect its security interest within the 10 days required by 11 U.S.C. § 547(c)(3)(B), that the perfection fell within no exception to avoidance, and thus the security interest was a voidable preference. *Edmondson v. Mandrell*, 39 B.R. 455 (Bankr.M.D.Tenn.) *aff'd*, (M.D.Tenn. Aug. 22, 1984). The car

1. *Edmondson v. Mandrell*, 39 B.R. 455, 459 n. 9 (Bankr.M.D.Tenn.) *aff'd*, (M.D.Tenn. Aug. 24, 1984).

2. As demonstrated below, the enforceability of "reaffirmed" debts is determined by state law. Neither party has argued whether this proceeding falls within the core described in new 28 U.S.C. § 157. We know that dependence on state law is not alone determinative of what is within or without the core. 28 U.S.C. § 157(b)(3). This complaint arguably addresses

issues "affecting the adjustment of the debtor-creditor relationship." 28 U.S.C. § 157(b)(2)(*O*). In addition, the conditions for reaffirmation agreements are created by substantive bankruptcy law.

3. We determined in the earlier decision cited in the margin above that the trustee's complaint was timely filed and not barred by laches or estoppel.

was surrendered to the trustee and sold for the benefit of the estate.

The debtor filed this adversary proceeding claiming that she is entitled to recover payments made to FMCC pursuant to the reaffirmed security agreement.

## II.

Formal reaffirmation agreements are new to the 1978 Bankruptcy Code. The 1898 Act did not specifically provide a mechanism for the revival of dischargeable debts. However, the bankrupt could waive the discharge protection and make a new promise to repay the debt. Such a promise was generally held enforceable despite a lack of new consideration. *See* 1 A J. Moore, COLLIER ON BANKRUPTCY § 17.33–.38 (14th ed. 1978). The validity and enforcement of these reaffirmations were matters of state contract law left to the exclusive jurisdiction of state courts. *Glass v. Miller & Kearney,* 577 F.2d 537 (9th Cir.1978).

Under the 1978 Code reaffirmation of debts is specifically allowed and controlled by 11 U.S.C. § 524(c).[4] Though awkwardly stated, the statute provides that a reaffirmed debt agreement "is enforceable only to any extent enforceable under applicable nonbankruptcy law." Therefore, we must look to Tennessee law to determine the issue presented by the debtor's complaint.

■ A reaffirmation agreement is a contract. Before entering into the reaffirmation agreement, the debtor is entitled to discharge the prepetition liability to the creditor and to be free of personal obligation to the creditor. In turn, the creditor, after expiration of the stay, has its original lien rights and, if its contract or state law so provides, the creditor can take possession of the collateral and realize upon its lien.[5] The essence of reaffirmation is the debtor's agreement to again be personally bound by the terms of the prepetition contract (debt) and the creditor's corresponding consent to forego execution upon its lien rights in favor of continued possession and use of the collateral by the debtor. In this case, the debtor promised to make monthly payments in exchange for the use of the car and FMCC gave up its claimed right to foreclose its lien and agreed to release its lien upon completion of the payments.

At the time of reaffirmation, the debtor and FMCC labored under the mutual mistake of fact that FMCC had an enforceable lien against the debtor's car.

When this case commenced, the car became property of the estate, 11 U.S.C. § 541, subject to the avoidable security interest of FMCC. At the time the reaffirmation agreement was approved, the estate's interest in the car was superior to that of FMCC though judicial recognition

---

**4.** When the reaffirmation agreement in this proceeding was made 11 U.S.C. § 524(c) provided in pertinent part:

> An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if—
> (1) such agreement was made before the granting of the discharge under section 727, 1141, or 1328 of this title;
> (2) the debtor has not rescinded such agreement within 30 days after such agreement becomes enforceable;
> (3) the provisions of subsection (d) of this section have been complied with; and
> (4) in a case concerning an individual, to the extent that such debt is a consumer debt

that is not secured by real property of the debtor, the court approves such agreement as—
> (A)(i) not imposing an undue hardship on the debtor or a dependent of the debtor; and
> (ii) in the best interest of the debtor; or
> (B)(i) entered into in good faith; and
> (ii) in settlement of litigation under section 523 of this title, or providing for redemption under section 722 of this title.

The 1984 Bankruptcy Amendments eliminated the requirement of court approval of reaffirmation agreements under some circumstances.

**5.** We are not here expressing any opinion of the creditor's rights to foreclose its lien in the absence of default other than the act of filing bankruptcy. *See General Motors Acceptance Corp. v. Bell,* 700 F.2d 1053 (6th Cir.1983).

of that fact came later. Technically, at the time of reaffirmation, FMCC gave as consideration for the debtor's new promise of personal liability its agreement to forebear from enforcement of a lien right which it could not enforce because of the intervention of the estate's rights under § 547. Though unknown to the debtor or FMCC, the debtor received nothing of value from FMCC.

Tennessee law recognizes that equity will rescind a contract executed under a mutual mistake of a material fact. *Warren v. Crockett*, 211 Tenn. 173, 364 S.W.2d 352, 355 (1962); *Isaacs v. Bokor*, 566 S.W.2d 532 (Tenn.1978). Tennessee cases recognize rescission as the appropriate remedy where there has been a complete failure of consideration. *Lloyd v. Turner*, 602 S.W.2d 503 (Tenn.App.1980) *cert. denied; Moyers v. Graham*, 83 Tenn. 57 (1885). *See also Hooks v. Snyder*, 22 B.R. 29 (Bankr.E.D.Tenn.1982).[6] The purchaser's recovery under a rescission theory is generally the consideration paid for the property. *See Simmons v. Evans*, 185 Tenn. 282, 206 S.W.2d 295 (1947); *Lebovitz v. Porter*, 252 S.W.2d 144 (Tenn.App.1952) *cert. denied*, (where a purchaser contracted to buy a theater from a vendor who did not have good title, the purchaser was entitled to recover purchase money paid).

 The debtor may recover payments made under the mistake of fact that FMCC had the right to enforce its lien. In the cases cited above, the purchaser's agreement to pay was based on a belief that the seller had good title to the property. When title failed, the purchaser was entitled to relief. Here the debtor agreed to make payments based on the mutual mistaken belief that FMCC had an enforceable security interest. Because the security interest "failed," the debtor is entitled to relief.

When a contract is rescinded, the parties should be returned to their status before the contract. *See Lloyd v. Turner*, 602 S.W.2d 503 (Tenn.App.) *cert. denied*, (1980). When the reaffirmation agreement was signed, FMCC had only an unsecured dischargeable claim. By ordering FMCC to return the payments it received, we return the parties to the positions they occupied before the agreement was made. Since FMCC had no right to enforce an agreement whose foundation (the existence of a valid security interest) was illusory, it should not be allowed to retain payments made pursuant to the agreement. The law and the equities of this situation demand this result.[7]

---

**6.** Tennessee courts also allow a purchaser to rescind a contract where the seller's title fails, notwithstanding a lack of fraud or deceit by the seller. *See Isaacs v. Bokor*, 566 S.W.2d 532 (Tenn.1970); *Bigham v. Madison*, 103 Tenn. 358, 52 S.W. 1074 (1899).

**7.** We note that the trustee has not been joined as a party in this proceeding. We reserve the question whether the estate should be compensated by the debtor for the "use value" or depreciation of the car for that time during which the debtor was driving the car while the estate was entitled to possession. *See In re Hama*, 16 B.R. 730 (Bankr.E.D.Va.1982); *In re Lafave*, 9 B.R. 859 (Bankr.E.D.Mich.1982).