CPB MANAGEMENT, INC. and Peter S. Brown Accountancy Corporation, Plaintiffs/Appellees,

v.

Don EVERLY, Individually and Old Black Crow, Inc., Defendants/Appellants.

Court of Appeals of Tennessee, Western Section, at Nashville.

June 14, 1996.

Application for Permission to Appeal Denied by Supreme Court Jan. 6, 1997.

Larry D. Ashworth, Peter D. Heil, Nashville, for defendants/appellants.

R. Horton Frank, III, Nashville, for plaintiffs/appellees.

HIGHERS, Judge.

Plaintiffs in this case are CPB Management, Inc. (CPB), a business management services company, and Peter S. Brown Accountancy Corp. (Brown Accountancy). Peter S. Brown is the sole officer and stockholder of both CPB and Brown Accountancy. Defendants are Don Everly of the Everly Brothers, and Old Black Crow, Inc., the corporate entity through which Don Everly conducts his business. Plaintiffs brought this suit against defendants to recover for certain accounting and management services allegedly performed for defendants. The chancellor held that Brown Accountancy was entitled to recover $5,322.25 from Old Black Crow, Inc.,

pursuant to an express oral contract between the parties, and that CPB was entitled to recover $33,900.00 from Don Everly individually, under a theory of unjust enrichment. Defendants have appealed and presented the following issues for our review: (1) whether the chancellor erred in awarding damages to CPB on an unjust enrichment theory when there existed an express contract between the parties; (2) whether the trial court erred in holding Old Black Crow, Inc. liable to Brown Accountancy for accounting services; and (3) whether the trial court erred in ruling that CPB was not required to possess a valid certificate of authority in order to maintain this action. For the reasons stated below, we reverse the trial court's judgment in part, and affirm in part.

The pertinent facts are as follows. In late 1989, Peter S. Brown and Don Everly agreed that CPB would act as Don's business manager in return for 5% of Don's gross income. In addition, the parties agreed that Brown Accountancy would prepare and file Don's tax returns for 1989 on a per-hour billing basis. Although Don alleges that the parties never agreed that Brown Accountancy would render accounting services for Old Black Crow, Inc., Brown alleges that the parties agreed that the tax returns were to be prepared and filed for both Don and Old Black Crow, Inc. Brown Accountancy subsequently prepared and filed the tax returns for both Don personally and for Old Black Crow, Inc. Don paid Brown Accountancy for its time spent preparing Don's individual taxes, but Old Black Crow, Inc. refused to pay for the time spent preparing the company's tax returns.

In August 1990, the Everly Brothers received an offer to perform a European tour to take place in the spring of 1991. Derek Block, a European concert promoter, sent the offer, which contained a list of tentative dates and venues for the proposed tour.

Brown testified that he submitted a proposal to Phil Everly whereby CPB would book appearances for the European tour in return for 5% of the total gross revenue generated from the tour. Brown stated that Phil agreed to the proposal, and directed him to go to Europe to begin booking the tour.

Brown stated that he spoke with Don about the proposal and that he "thought his (Don's) reaction was good." Brown subsequently went to London in 1990 and met with promoters to book the tour.

In March 1991, Don terminated CPB's services. In April and May of 1991, the Everly Brothers performed the European tour, which grossed a total of $678,000.00. Phil paid 5% of his share of the revenue generated by the tour to CPB, which was $33,900.00. Don refused to pay 5% of the profits from the 1991 tour. However, Don paid CPB 5% of his total gross earnings from 1990, which was $54,213.74.

No written contract existed between Don and CPB. Brown conceded that Don did not expressly agree to pay him 5% of the gross receipts of the tour in addition to the 5% that Don had already agreed to pay, but testified that Don implied that he would pay. According to Brown, Don knew that Brown was working to put together the European tour and did not object. In contrast, Don testified that he did not, at any time, agree to pay Brown any amount beyond the 5% that the parties had already agreed upon. Don stated that he said, "No way," in response to Brown's proposal. Don also testified that Brown was terminated prior to the tour and that Don had nothing to do with Brown's work in Europe because Phil sent him to Europe. However, Don admitted that he "had a notion" that Brown was seeking an additional 5% for booking the European tour and that he did not stop Brown from putting the tour together.

Phil Everly admitted that Brown sought additional money for services performed in connection with the European tour, but denied that he agreed to pay Brown the additional money. Phil in fact paid Brown 5% of his share of the revenues generated by the tour because, Phil said, he was planning to terminate Brown's services and did not want any animosity between them. Phil testified that he explicitly told Brown the day that Brown left for Europe that Don would not go along with his proposal and that Don would never agree to pay him any additional money.

The chancellor found that Don Everly and Brown agreed that Brown Accountancy would prepare and file both Don Everly's and Old Black Crow Inc.'s tax returns for 1989, in return for compensation on an hourly basis. Accordingly, the chancellor entered a judgment for Brown Accountancy against Old Black Crow, Inc. in the amount of $5,322.25. The chancellor further held that Don Everly either knew or should have known that Brown expected to be paid for his services in arranging and booking the tour and that Don knowingly accepted the services of CPB in this regard. The chancellor entered a judgment for CPB against Don Everly in the amount of $33,900.00 upon a theory of unjust enrichment.

Don argues on appeal that CPB should not be allowed to recover under a theory of unjust enrichment because there existed an express contract that encompassed the same subject matter and there was no valid modification to the express contract. According to Don, Brown's services performed in connection with the European tour were not additional to or different from the services Brown had previously performed as business manager on previous tours. Don claims that the fact that he paid Brown 5% of his gross earnings from 1990 pursuant to the parties' express contract fulfilled his contractual obligations.

The trial court's findings with reference to the plaintiffs' claims of unjust enrichment are afforded a presumption of correctness on appeal and we must affirm, unless the evidence preponderates otherwise. T.R.A.P. 13(d).

The doctrine of unjust enrichment is founded upon the principle that someone who receives a "benefit desired by him, under circumstances rendering it inequitable to retain it without making compensation, must do so." *Lawler v. Zapletal*, 679 S.W.2d 950, 955 (Tenn.App.1984).

In *Paschall's, Inc. v. Dozier*, 219 Tenn. 45, 407 S.W.2d 150 (1966), the Court said:

Actions brought upon theories of unjust enrichment, quasi contract, contracts implied in law, and quantum meruit are essentially the same. Courts frequently

employ the various terminology interchangeably to describe that class of implied obligations where, on the basis of justice and equity, the law will impose a contractual relationship between parties, regardless of their assent thereto.

*Id.* 407 S.W.2d at 154.

Quantum meruit recoveries are limited to the actual value of the goods or services, rather than the contract price. *Lawler,* 679 S.W.2d at 955. Consequently, a court may not award a recovery in quantum meruit without some proof of the reasonable value of the goods or services. *Bokor v. Holder,* 722 S.W.2d 676, 681 (Tenn.Ct.App. 1986).

A party seeking to recover on a quantum meruit action is entitled to recover the reasonable value of services performed when the following circumstances exist:

(1) there must be no existing, enforceable contract between the parties covering the same subject matter. *Robinson v. Durabilt Mfg. Co.,* 195 Tenn. 452, 454–55, 260 S.W.2d 174, 175 (1953);

(2) the party seeking recovery must prove that it provided valuable goods and services, *Moyers v. Graham,* 83 Tenn. 57, 62 (1885); *Wrinkle v. J.F. Larue & Son,* 9 Tenn.App. 161, 165–66 (1927);

(3) the party to be charged must have received the goods and services, *Paschall's, Inc. v. Dozier,* 219 Tenn. 45, 54, 407 S.W.2d 150, 154 (1966); *Jaffe v. Bolton,* 817 S.W.2d 19, 26 (Tenn.Ct.App.1991);

(4) the circumstances must indicate that the parties involved in the transaction should have reasonably understood that the person providing the goods or services expected to be compensated, *V.L. Nicholson Co. v. Transcon Inv. & Fin. Ltd.,* 595 S.W.2d 474, 482 (Tenn.1980); and

(5) the circumstances must also demonstrate that it would be unjust for the party benefitting from the goods or services to retain them without paying for them. *Paschall's, Inc. v. Dozier,* 219 Tenn. at 54, 407 S.W.2d at 154; *Reprise Capital Corp. v. Rogers Group, Inc.,* 802 S.W.2d 608, 610 (Tenn.Ct.App.1990).

*Castelli v. Lien,* 910 S.W.2d 420, 427 (Tenn. App.1995).

Examining the evidence in light of the above delineated factors, it appears that the focal issue in the present case is whether the existing management services contract between Don and CPB covered the same subject matter as the services performed by Brown in Europe. Don argues that Brown did no more in connection with the European tour than he was obligated to do under the express contract for management services.

It is undisputed that Brown traveled to Europe and worked on arranging the European tour for the Everly Brothers. According to Brown, his services in Europe for the 1991 tour included reviewing the venues for the concert, meeting with individuals regarding foreign taxes, and booking additional play dates for the Everly Brothers.

Brown testified that prior to the 1991 European tour, he was responsible for putting tours together, "getting the dates okayed, the money okayed." He agreed that putting tours together had always been part of his job. Excerpts from Brown's testimony at trial that we found to be particularly pertinent are as follows:

Q. Prior to the fall of 1990 when you traveled to Europe to meet with Derek Block and put together the 1991 tour, had you ever traveled to Europe and performed those kind of services in connection with any Everly Brothers' tour?

A. Most every time we did since the reunion.

\* \* \* \* \* \*

Q. Just like you wrote in the letter in April 17th, which is Defendants' Exhibit 5. When you wrote the letter to Donald Barrett, you said, 'My duties at that time were those of personal manager, business manager, accountant. I traveled on tours in US and Europe, settled tours, foreign tax problems, negotiated with agents, okayed each and every date, routed tours.' . . . That's what you always did. That was your job.

A. That's right. I agree.

\* \* \* \* \* \*

Q. Isn't it true it's not unusual for you to be involved in the planning and laying out of the Everly tours at all? It's not unusual?

A. No.

Q. In fact, Mr. Brown, isn't it true you had been involved in every tour that the Everly Brothers had performed since the reunion in 1974 and you were always responsible for putting the tours together day by day and setting dates?

A. That's correct.

Q. That's what you were paid the 5 percent for; isn't that true?

A. Yes.

Q. Since the reunion that has always been a part of your responsibility; isn't that correct?

A. Yes.

Q. And that was for 5 percent of the gross that Mr. Everly—Don Everly and Mr. Phil Everly received. That's how you were paid; correct? That's part of your job.

A. Let me think a second. I'm going to have to answer that I don't know at this point . . .

Q. Isn't it true you did as much on all of the rest of the tour since the reunion as you did on the 1991 tour? Isn't that correct?

A. Basically, yes.

■ "In practice, separating the functions and activities of personal managers and booking agents is difficult, since the personal manager often fulfills both roles." Michael I. Yanover, *Artist/Management Agreements and the English Music Trilogy: Another British Invasion?*, 9 Loy.Ent.L.J. 211, 212 (1989). Brown apparently acted in the dual capacity of both agent and manager prior to the 1991 European tour. Although plaintiffs have directed us to isolated snippets of testimony suggesting that Brown had not previously rendered booking services for Don, this modicum of evidence is not sufficient to overcome Brown's own testimony to the effect that his management services contract included some booking services. Accordingly, we find that plaintiff CPB has failed to carry its burden of demonstrating to this court that the services performed for Don in Europe were not encompassed by the express contract between the parties. Thus, CPB is not entitled to recover an additional 5% of the gross revenues from the tour from Don because the record does not sufficiently support a finding of unjust enrichment to Don.

Defendants' second contention on appeal is that the evidence preponderates against the trial court's finding that Old Black Crow, Inc. is liable to Brown Accountancy in the amount of $5,322.25. Defendant argues that there is no proof in the record that Brown Accountancy had a contract with Old Black Crow, Inc., for accounting services.

■ Although oral contracts are enforceable, the terms of the agreement must be proved by those seeking to enforce them. *Castelli*, 910 S.W.2d at 426.

■ After reviewing the record, we are of the opinion that there is insufficient evidence of an oral contract between Brown Accounting and Old Black Crow, Inc. with terms definite enough to be enforced by this court. However, the record reflects that Brown Accounting did in fact perform work in preparing and filing tax returns for Old Black Crow, Inc. Consequently, we will allow Brown Accounting to recover for the reasonable value of its services in performing such work under the theory of unjust enrichment. Brown accountancy submitted to Old Black Crow, Inc. a detailed billing statement regarding the tax services performed for Old Black Crow. No evidence was presented indicating that these charges were unreasonable. We therefore affirm the trial court's judgment awarding Brown Accountancy $5,322.25 against Old Black Crow, Inc.

Finally, defendants argue that CPB may not maintain the present action due to its failure to obtain a certificate of authority.

■ CPB obtained a certificate of authority shortly after it commenced the present action, but such certificate was administratively revoked on September 17, 1993. The Secretary of State reinstated the certificate of authority for CPB on August 2, 1995.

T.C.A. § 48–25–102(a) provides:

A foreign corporation transacting business in this state without a certificate of authority may not maintain a proceeding in any court in this state until it obtains a certificate of authority.

T.C.A. § 48–25–102(a) (1995).

■ Defendants bear the burden of proving that plaintiffs violated T.C.A. § 48–25–102(a). *Shoenterprise v. Butler*, 329 S.W.2d 361 (Tenn.App.1959).

■ A corporation that is in noncompliance with the statute may file its lawsuit, cure its noncompliance, and continue its litigation. *Amer. Bldgs. Co. v. White*, 640 S.W.2d 569, 575 (Tenn.App.1982). When a certificate of authority is reinstated, it relates back to the date of the administrative revocation. T.C.A. § 48–25–303(c).

Consequently, defendants' contention is without merit as to CPB because CPB cured its noncompliance.

Accordingly, the judgment of the trial court awarding $33,900.00 to CPB Management, Inc. is reversed. The judgment is affirmed in all other respects. Costs on appeal are taxed equally to the parties.

FARMER and LILLARD, JJ., concur.