IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JUNE 22, 2004 Session

CRYE LEIKE, INC., ET AL. v. RICHARD SCOTT OUER

Direct Appeal from the Chancery Court for Madison County
No. 54441     James F. Butler, Chancellor

No. W2003-02590-COA-R3-CV - Filed November 16, 2004

This case arises out of the sale of real estate located in Madison County, Tennessee. Appellants filed this action to recover a real estate commission under a theory of unjust enrichment. The trial court below granted Appellee's motion for summary judgment, and Appellants now seek review by this Court. For the following reasons, we affirm.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLY M. KIRBY, J., joined.

Roger A. Stone, Memphis, TN, for Appellants

David E. Caywood, Lucie Brackin, Memphis, TN, for Appellee

OPINION

Facts and Procedural History

In March 1996, Ray Wilder ("Wilder"), an affiliate broker for Crye Leike, Inc. ("Crye Leike" or, collectively with Wilder, the "Appellants"), traveled to the home of Richard S. Ouer ("Ouer" or "Appellee") in Vail, Colorado, to persuade Ouer to enter into a real estate agency agreement and contract for the sale of real property located in Madison County, Tennessee. Ouer was a co-beneficiary of the Harvey-Proctor Trust, which owned the real property at issue, located next to a hospital. At the meeting, Wilder presented Ouer with a written proposal to sell the real property to West Tennessee Healthcare, Inc. The agreement contained a provision for Crye Leike and Wilder to receive a two percent (2%) commission from the gross proceeds of the sale.

At the meeting, Ouer did not sign the proposed real estate agency agreement and contract for sale, nor did Ouer promise to do so. Ouer explained to Wilder that he was not signing the agreement

because (1) he did not want to sign any documents until his attorney reviewed them, (2) he was already expending monies for attorneys since the property was held in a trust, and (3) the land was family land and Ouer did not "feel right" paying a commission for its sale. It is undisputed that Wilder left the meeting without a signed agreement for a commission. Though Wilder did not secure an agreement with Ouer, he did obtain an agreement with the other beneficiaries of the Harvey-Proctor Trust for a two percent (2%) commission.

The real property was ultimately sold months later in May 1996 to West Tennessee Healthcare, Inc., but Ouer never signed any of the documents presented to him by Wilder. The contract for sale stated that the price for the land was $3.80 per square foot. Ouer also stated that the Harvey-Proctor Trust sold real property to West Tennessee Healthcare, Inc.[1] prior to the sale in question, ranging from $3.80 per square foot up to $4.25 per square foot. Additionally, Wilder was aware that the trust had previously sold property to West Tennessee Healthcare, Inc. for medical uses.

On March 4, 1998, Crye Leike filed a complaint for unjust enrichment against Ouer in the Madison County Chancery Court. On December 28, 1998, the complaint was amended to include Wilder as an additional party plaintiff. After discovery depositions were taken, Ouer filed a motion for summary judgment on July 17, 2003, which the chancery court granted on September 29, 2003. Crye Leike and Ouer appealed to this Court and present the following issues for our review:

I. Whether the trial court erred when it determined no genuine issue of material fact existed such that granting summary judgment in favor of Ouer was appropriate on the claim of unjust enrichment; and
II. Whether the "procuring cause" rule is applicable in this case because of the nature of the relationship between the parties.

For the following reasons, we affirm the grant of summary judgment in favor of Appellee.

**Standard of Review**

Our standard for reviewing a grant of summary judgment is *de novo* without a presumption that the trial court's conclusions were correct. *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001) (citing *Mooney v. Sneed*, 30 S.W.3d 304, 306 (Tenn. 2000)). When a court considers a motion for summary judgment, it should view the evidence "in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor." *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000) (citing *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d 208, 210-11 (Tenn. 1993)). "Summary judgment is appropriate only when the moving party demonstrates that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Webber*,

---

[1] Though the record is not completely clear, it appears that West Tennessee Health Care, Inc. is interchangeable with the Jackson-Madison County General Hospital.

49 S.W.3d at 269 (citing Tenn. R. Civ. P. 56.04; *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000); *Byrd*, 847 S.W.2d at 210). "Courts should grant summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion." *Staples*, 15 S.W.3d at 89 (citing *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995)).

## Unjust Enrichment

Appellants first argue that the trial court erred when it granted summary judgment in favor of Appellee on Appellants' unjust enrichment claim. "The doctrine of unjust enrichment is founded upon the principle that someone who receives a 'benefit desired by him, under circumstances rendering it inequitable to retain it without making compensation, must do so.'" *CPB Mgmt., Inc. v. Everly*, 939 S.W.2d 78, 80 (Tenn. Ct. App. 1996) (quoting *Lawler v. Zapletal*, 679 S.W.2d 950, 955 (Tenn. Ct. App. 1984) (quoting *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 154 (Tenn. 1966))). Further, the Tennessee Supreme Court has stated:

> Actions brought upon theories of unjust enrichment, quasi contract, contracts implied in law, and quantum meruit are essentially the same. Courts frequently employ the various terminology interchangeably to describe that class of implied obligations where, on the basis of justice and equity, the law will impose a contractual relationship between parties, regardless of their assent thereto.

*Paschall's, Inc.*, 407 S.W.2d at 154. This Court has enumerated the requirements for recovery under a theory of unjust enrichment:

> A party seeking to recover on a quantum meruit action is entitled to recover the reasonable value of services performed when the following circumstances exist:
>
> > (1) there must be no existing, enforceable contract between the parties covering the same subject matter. *Robinson v. Durabilt Mfg. Co.*, 195 Tenn. 452, 454-55, 260 S.W.2d 174, 175 (1953);
> >
> > (2) the party seeking recovery must prove that it provided valuable goods and services, *Moyers v. Graham*, 83 Tenn. 57, 62 (1885); *Wrinkle v. J.F. Larue & Son*, 9 Tenn. App. 161, 165-66 (1927);
> >
> > (3) the party to be charged must have received the goods and services, *Paschall's, Inc. v. Dozier*, 219 Tenn. 45, 54, 407 S.W.2d 150, 154 (1966); *Jaffe v. Bolton*, 817 S.W.2d 19, 26 (Tenn. Ct. App. 1991);
> >
> > (4) the circumstances must indicate that the parties involved in the transaction should have reasonably understood that the person providing the goods or services expected to be compensated, *V.L.*

> *Nicholson Co. v. Transcon Inv. & Fin. Ltd.*, 595 S.W.2d 474, 482
> (Tenn. 1980); and
>
> (5) the circumstances must also demonstrate that it would be unjust
> for the party benefitting from the goods or services to retain them
> without paying for them. *Paschall's, Inc. v. Dozier*, 219 Tenn. at 54,
> 407 S.W.2d at 154; *Reprise Capital Corp. v. Rogers Group, Inc.*, 802
> S.W.2d 608, 610 (Tenn. Ct. App. 1990).

*CPB Mgmt., Inc.*, 939 S.W.2d at 81 (quoting *Castelli v. Lien*, 910 S.W.2d 420, 427 (Tenn. Ct. App. 1995)).

In this case, the undisputed facts indicate that summary judgment in favor of Appellee is appropriate. It is true that there was no existing, enforceable contract between the parties regarding the subject matter of a commission for sale of the real property held in the Harvey-Proctor Trust. However, the circumstances do not indicate that the parties in the "transaction"–Crye Leike, Wilder, and Ouer–should have reasonably understood that Wilder and Crye Leike expected to be compensated. Neither Wilder nor Crye Leike introduced Ouer to West Tennessee Healthcare, the ultimate purchaser of the property. The deposition testimony of both Ouer and Wilder and a letter to the trust beneficiaries written by Wilder indicate that both knew the Harvey-Proctor Trust had previous dealings and communications with the Jackson-Madison County General Hospital and West Tennessee Healthcare. Additionally, the testimony further evidences that, after leaving Vail, Colorado, Ouer had not signed the agreement for a commission and did not indicate he was going to sign the agreement at any future point in time. In his deposition testimony, Wilder admits that Ouer had three reasons for refusing to sign any agreement with Wilder or Crye Leike: (1) he did not want to sign any documents until he and his attorney reviewed them; (2) he was already expending monies for attorneys since the property was held in a trust and did not want to pay money to a real estate agency; and (3) the land was family land and Ouer did not "feel right" paying a commission for its sale. Deposition testimony of both Wilder and Ouer indicate that Ouer did not want a real estate agency involved in the sale of the real property. Under these circumstances, from the undisputed facts, neither Ouer nor Crye Leike and Wilder should have reasonably understood that Wilder and Crye Leike expected compensation for any services rendered. Therefore, we affirm the grant of summary judgment in favor of Appellee.

### Procuring Cause

Alternatively, Appellants argue that summary judgment in favor of Appellee was inappropriate because Crye Leike, through its affiliate broker, Wilder, was the "procuring cause" of the sale to West Tennessee Healthcare. Specifically, Appellants argue that the rule, as enumerated in *Pyles v. Cole*, 241 S.W.2d 841, (Tenn. Ct. App. 1951), entitles them to a commission. In that case, this Court stated: "[t]he rule is that if a broker is employed to sell property and he first brings the property to the notice of the ultimate purchaser, and upon such notice the sale is effected by the owner, the broker is entitled to commission." *Pyles*, 241 S.W.2d at 844 (citing *Royster, Waldran*

*& Bacon v. Mageveney*, 77 Tenn. 148 (Tenn. 1882)).  We hold that such rule does not apply to the circumstances of this case.

First, we note that it is undisputed that no agreement existed, requiring Ouer to pay Crye Leike and Wilder a commission for the sale of the real property held by the Harvey-Proctor Trust. In *Pyles*, the parties entered into a written contract for the plaintiff to sell defendants' farm and receive a commission.  *Id*. at 842.  The contract expired, but, as the defendants were aware, the plaintiff made continued attempts to sell the farm.  *Id*. at 843.  Eventually, the interested buyer returned to the farm and negotiated with the defendants, resulting in a sale of the farm in plaintiff's absence.  *Id*.  Applying the above rule, the court determined that a commission under the circumstances was proper.  *Id*. at 844.  In this case, no such agreement ever existed.  The rule requires that the broker be "employed" by the seller.  There is no evidence adduced in the record to indicate that Wilder or Crye Leike were ever employed by Ouer.  Additionally, the rule requires the broker to bring the property to the notice of the ultimate purchaser.  The deposition testimony of Wilder and Ouer both indicate that West Tennessee Healthcare, the ultimate purchaser, had dealings with Ouer and the Harvey-Proctor Trust previously.  Therefore, the "procuring cause" doctrine, as defined in *Pyles v. Cole*, does not apply to the circumstances of this case.  For these reasons, we must affirm the grant of summary judgment in favor of Appellee.

### Conclusion

For the reasons stated above, we affirm the grant of summary judgment in favor of Appellee. Costs of this appeal are taxed to Appellants, Crye Leike, Inc. and Ray Wilder, and their surety for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE