**Alan LAWLER, d/b/a International Talent Management, Plaintiff-Appellee,**

**v.**

**Ed ZAPLETAL and Myron Stillman (a/k/a Rick A. Fretter), d/b/a Myron and the Marvells, a Partnership, Defendants-Appellants.**

Court of Appeals of Tennessee,
Middle Section,
at Nashville.

Aug. 2, 1984.

Rehearing Denied Aug. 30, 1984.

Application for Permission to Appeal
Denied by Supreme Court
Nov. 5, 1984.

John D. Kitch, Nashville, for plaintiff-appellee.

Denty Cheatham, Cheatham & Palermo, Nashville, for defendants-appellants.

## OPINION

LEWIS, Judge.

Plaintiff brought suit against the defendants in the Chancery Court for Davidson County, Tennessee, and alleged that defendants had breached an agreement between the parties "by failing and refusing to pay the Plaintiff" sums due and owing under the agreement. At the beginning of trial plaintiff was allowed to amend to seek, in the alternative, recovery on the basis of "unjust enrichment."

Defendants denied that they owed plaintiff any sums and filed a counterclaim in which they alleged that plaintiff breached his contractual obligations to defendants and sought damages against plaintiff "in an amount not to exceed $8,000.00."

At the conclusion of an evidentiary hearing, the Chancellor awarded plaintiff a judgment for $6,530 on the basis of "unjust enrichment" and dismissed defendants' counterclaim.

Plaintiff is a "booking agent" and/or manager representing acts in the entertainment business. Defendants are a musical group which specializes in playing 1950s–60s music in clubs.

In July, 1980, the parties began talking about a relationship in which plaintiff would book and manage defendants. At that time defendants had seven weeks of open dates remaining in 1980. These were the weeks of September 21 through September 28, October 19 through 25, November 9 through 16, and the month of December.

On September 17, 1980, the parties entered into a "Letter of Understanding," as follows:

MR. ED ZAP

MR. MYRON STILLMAN

c/o MYRON AND THE MARVELLS

GENTLEMEN:

THIS LETTER OF UNDERSTANDING BETWEEN ED ZAP/MYRON STILL-MAN AKA MYRON AND THE MAR-VELLS, ARTIST, AND ALAN LAWLER DBA INTERNATIONAL TALENT MANAGEMENT, MANAGER, WILL SERVE AS OUR AGREEMENT ON THE FOLLOWING BASIS UNTIL SUCH TIME AS FORMAL CONTRACTS CAN BE EXECUTED BY BOTH PARTIES.

1. MANAGER WILL EXPEND WHATEVER TIME, MONIES AND ENERGY NECESSARY TO FILL OPEN DATES FOR ARTIST DURING THE REMAINDER OF 1980.

2. MANAGER WILL BEGIN PLANNING TOTAL CARRER [sic] GUIDANCE, MANAGEMENT AND BOOKING FOR ARTIST DURING THIS INTERIM PERIOD AND UNTIL SUCH TIME AS MANAGEMENT CONTRACTS ARE EXECUTED. EXECUTION OF SAID CONTRACTS WILL BE MADE AT THE EARLIEST TIME POSSIBLE FROM THE DATE OF THIS LETTER OF AGREEMENT.

3. ARTIST WILL PROVIDE FULL PROMOTIONAL MATERIAL FOR MANAGER TO PROPERLY UTILIZE FOR SUCH PURPOSE.

4. ARTIST WILL PAY MANAGER A SUM EQUAL TO FIFTEEN PER-

CENT (15%) OF ALL GROSS BOOKINGS DURING THE PERIOD MENTIONED ABOVE.

I AM MOST PLEASED THAT WE WILL REPRESENT MYRON AND THE MARVELLS AND ASSURE YOU THAT MY GOAL IS TO SEE TO IT THAT THIS GROUP WILL ATTAIN THE STATURE IN OUR BUSINESS THAT YOU DESERVE. OUR SIGNATURES . WILL ACKNOWLEDGE AGREEMENT WITH THE ABOVE.

/s/ Alan Lawler /s/ Ed Zap
 /s/ Rick A. Fretter
 a.k.a. Myron Stillman

ALAN LAWLER FOR: MYRON AND THE
PRESIDENT MARVELLS
INTERNATIONAL TALENT ED ZAP
MANAGEMENT MYRON STILLMAN

Paragraph 4 was amended to show that plaintiff would receive fifteen percent (15%) on bookings in excess of $6,000 per week and ten percent (10%) on bookings up to $5900.

At the time the "Letter of Understanding" was signed, none of the open dates had been filled. After the "Letter of Understanding" was signed, plaintiff during 1980 obtained seven bookings for defendants. Six of these were to be performed in 1981, and one was to be performed in 1980 during the first two weeks in December at a Memphis club. Less than two weeks before defendants were to appear at the Memphis club, the club cancelled the booking. Four of the bookings obtained by plaintiff for defendants were performed by defendants in 1981, and defendants grossed $65,300 from these bookings. The other two bookings fell through because the clubs closed before the engagements were to be performed. Each of the bookings obtained for defendants were in clubs that defendants had played prior to their relationship with plaintiff.

Plaintiff requested defendants to pay him commissions for the four engagements which he booked and defendants played in 1981. Defendants insist they are not liable to plaintiff for commissions for the dates booked in 1981 since, among other reasons, they had previously played these clubs.

Defendants' first issue is as follows:

Where a contract between a partnership of musical entertainers and a personal manager required the manager to obtain bookings for the group to fill certain open dates, but such manager failed to obtain any bookings, making it necessary for the group to obtain their own last-minute bookings for such dates; and the group presented proof of their damages caused by the manager's nonperformance, by showing the difference between what the group could and did earn at other times, as compared to their income for these dates, which proof was admitted without objection; was it error for the Trial Court to award nothing to the group for the manager's breach of contract, and deny a new trial, on the grounds that such proof was inadequate to show defendants' loss or damages?

We must first determine whether plaintiff breached the contract. Defendants contend that pursuant to the "Letter of Understanding," plaintiff assumed the status of personal manager and, as between plaintiff and defendants, owed defendants a "strict duty of care." They argue that this duty of care was breached when plaintiff failed to comply with his "guarantee" in filling the remaining open dates in 1980.

In support of their contention that they are entitled to damages for the alleged breach of the artist-management relationship, defendants rely on *Wil-Helm Agency v. Lynn*, 618 S.W.2d 748 (Tenn.App.1981).

We are of the opinion that defendants' reliance on *Wil-Helm* is misplaced. In *Wil-Helm*, the agency clearly breached the contract by the willful misconduct of one of its owners. There was wrongdoing on the part of the agency.

In this case we fail to find that plaintiff is guilty of any wrongful acts that caused a breach of the contract. Defendants rely solely on the following language: "MANAGER WILL EXPEND WHATEVER TIME, MONIES AND ENERGY NECESSARY TO FILL OPEN DATES FOR ARTIST DURING THE REMAINDER OF 1980." They contend that this language

amounts to a "guarantee" that plaintiff will fill the seven open weeks in 1980 and that his failure to do so constituted a breach.

■ Although inartfully drawn, we do not construe the foregoing as a "guarantee." We are also of the opinion that the parties did not so construe it. Defendant Ed Zapletal testified that he gave plaintiff "information about open dates ... that needed to be booked" in July and that plaintiff "was to start *trying* to fill our open dates at that time." (Emphasis added.)

When the "Letter of Understanding" was signed on September 17, 1980, defendants knew that plaintiff had not filled the 1980 open dates. One of those open dates was only four days away, September 21 through September 28.

Mr. Zapletal further testified on direct examination as follows:

Q. Did you discuss at that time [September 17, 1980] the open dates you had in 1980?

A. Yes.

Q. Did you discuss having a trial period for the management situation?

A. Yes, we did.

Q. What was the trial period?

A. Through the remainder of 1980.

Q. What did you expect in the way of performance from him before you entered into the management contract that was discussed?

A. We expected that he would book us better than we could book ourselves.

Plaintiff testified that he told defendants that he would "work as hard as I could to try to come up with dates; to fill their open dates both in '80 and in '81. You don't make any promises in this business."

Plaintiff complied with the terms of the "Letter of Understanding." He immediately began an attempt to fill the open dates. While he was able to obtain only one booking for 1980, he did obtain six to be performed in 1981. Defendants filled four of these; two were not filled because the clubs were closed. Plaintiff also performed other services on behalf of defendants. We find no breach of the contract by plaintiff.

■ However, even if plaintiff had breached the contract, we hold that the Chancellor correctly refused to award damages. The Chancellor, regarding damages, found as follows:

The Court finds that the defendants cannot claim a set-off or affirmatively obtain judgment against the plaintiff through their counter-complaint, and no such set-off or judgment is awarded. There are three reasons for this: First, the proper measure of damages is loss of profit, not loss of gross income, and the only proof by the defendants was of lost gross income; second, any income lost would have to be set off against the total income obtained for the defendants by the plaintiff, not just against his commission; and third, so many variables exist with regard to the income the act might or might not have produced that the Court cannot state that the plaintiff's acts were the proximate cause of any alleged loss by the defendants.

We agree. There is nothing in this record from which it can be found "with any degree of certainty that anything that plaintiff did or did not do caused this loss of income to the defendants."

"The rule, applicable in situations of contract and in actions of tort, is that uncertain, contingent, or speculative damages may not be recovered." *Maple Manor Hotel, Inc. v. Metropolitan Government of Nashville and Davidson County*, 543 S.W.2d 593, 599 (1975) (quoting 25 C.J.S. *Damages* § 26). "The rule which precludes the recovery of uncertain damages applies to such damages as are not the certain result of a wrong...." *Acuff v. Vinsant*, 59 Tenn.App. 727, 737, 443 S.W.2d 669, 674 (1969). Any damages defendants might have suffered are not the "certain result of a wrong" of plaintiff.

Additionally, the only proof offered by defendants in support of their counterclaim

for damages is that they grossed approximately $20,000 less as a result of plaintiff's failure to fill the 1980 open dates. "In a proper case, loss of net profits is compensable. Gross sales loss is not. Gross sales may increase and profits at the same time decrease. The converse may also be true." *Joy Floral Company v. South Central Bell Telephone Co.*, 563 S.W.2d 190, 192 (Tenn.App.1977).

■ This case is before us from a trial by the Chancellor without a jury. We review the findings of fact by the Chancellor de novo upon the record accompanied by a presumption of the correctness of the findings of the Chancellor, unless the preponderance of the evidence is otherwise. Tenn.R.App.P. 13(d). The appellant on appeal has the burden of showing that the evidence preponderates against the decree of the Chancellor. *Capital City Bank v. Baker*, 59 Tenn.App. 477, 442 S.W.2d 259 (1969). Defendants have failed to carry their appellate burden of showing that plaintiff breached the contract and that they are entitled to damages under their counterclaim. Defendants' first issue is without merit.

Defendants' second issue is:

Where a plaintiff makes a written contract to do "whatever" is "necessary" to obtain certain benefits for defendants, but fails to obtain any of them, is he entitled to recover from such defendants in full for other incidental services he rendered, outside his written contract, upon an unjust enrichment theory, without any accounting to the defendants for their damages caused by his failure to perform his written contract?

The Chancellor found, in part, as follows:

The contract originally sued upon is not susceptible to interpretation regarding whether it covers dates booked in 1980 but to be performed in 1981, and the parties disagree as to their intent in the making of the contract. The burden of proving the contract is part of the plaintiff's overall burden of proof and the Court finds that the plaintiff has not carried his burden of proving the contract. Therefore, the plaintiff is not entitled to recover under the contract.

However, the Court finds that the plaintiff is entitled to recovery from the defendants under plaintiff's theory of unjust enrichment. . . .

In this case, the Court finds that an implied contract existed between the plaintiff and the defendants relative to the four engagements in dispute. The Court further finds that the most important issues regarding this determination are whether the work performed by plaintiff was useful and whether the custom in the industry was to pay someone who obtained bookings for a group where the group had played before. The Court finds that the plaintiff obtained the four bookings in question for the defendants, raising the inference that the work was useful. This places the burden of showing the absence of usefulness on the defendants, and they have failed to meet that burden by their simple showing that they had played at the clubs before.

Additionally, the Court is persuaded by the testimony of Mr. Tandy Rice, Mr. George Harness, and Mr. Craig Nowag that the custom in the industry is to pay a person who books an act into a club, even if the act has played the club before. Although Mr. Harness did not testify as to any given rate, the other two witnesses mentioned each placed the lower limit of compensation at ten percent (10%). Therefore, the plaintiff is entitled to judgment against the defendants in the amount sued for, namely $6,530.00.

Defendants argue that plaintiff's recovery under the theory of unjust enrichment must be reduced or offset by the damages suffered by defendants "as a result of plaintiff's nonperformance of their original written contract." Defendants' argument under this issue presupposes a finding that plaintiff breached the contract causing defendants damages.

As we have heretofore stated under issue one, we agree with the Chancellor's finding "that the defendants cannot claim a

set-off or affirmatively obtain judgment against the plaintiff through their counter-complaint ... [because] so many variables exist with regard to the income the act might or might not have produced that the Court cannot state that the plaintiff's acts were the proximate cause of any alleged loss by the defendants."

 As determined by the Chancellor, plaintiff is entitled to a judgment on the theory of "unjust enrichment." The doctrine of unjust enrichment is founded upon the principle that someone "receiving a benefit desired by him, under circumstances rendering it inequitable to retain it without making compensation, must do so." *Paschall's Inc. v. Dozier*, 219 Tenn. 45, 54, 407 S.W.2d 150, 154 (1966). The measure of compensation for unjust enrichment is based on the reasonable value of the services "to be judged by the customs and practices prevailing in that kind of business." *Chisholm v. Western Reserves Oil Co.*, 655 F.2d 94, 96 (6th Cir.1981). In this case the record fully supports the Chancellor's finding that a benefit was conferred upon the defendants through the bookings obtained by plaintiff; that defendants were desirous of the bookings, that defendants knew that plaintiff obtained the bookings, that plaintiff expected to be paid a commission for the bookings, and that the custom in the music industry is that an agent receive a commission for bookings.

The defendants knew plaintiff obtained bookings with the "Golden Rocket" in Phoenix, Arizona, and the Opryland Hotel in Nashville. Defendants played these dates, and plaintiff made demand for payment after defendants had played, but defendants declined to pay. Three managers and/or booking agents testified, two on behalf of plaintiff, and one on behalf of defendants. Each testified that a person who books an act into a club is entitled to payment regardless of whether the act has played the club before or is currently discussing a return engagement with the club and that this is a recognized custom in the industry. They testified that the customary commission for bookings of that nature is ten, fifteen, or twenty percent of the gross bookings. The four dates played by defendants, booked by plaintiff, resulted in the gross payment to defendants of $65,-300. The Chancellor correctly awarded damages to plaintiff on the theory of "unjust enrichment" in the amount of $6,530.

The judgment of the Chancellor is affirmed with costs assessed to defendants and the cause remanded to the Chancery Court for the collection of costs and any further necessary proceedings.

TODD, P.J. (M.S.), and KOCH, J., concur.

### ORDER ON PETITION TO REHEAR

Defendants/appellants have filed their petition to rehear which we have considered and find to be without merit. While we did not cite *Cummins v. Brodie*, 667 S.W.2d 759 (Tenn.App.1983) in our opinion, it was considered in arriving at our decision.

The petition to rehear is respectfully overruled with costs to defendants/appellants.