**STARR PRINTING CO., INC., Plaintiff,**

v.

**AIR JAMAICA, Defendant.**

**Air Jamaica, Third–Party Plaintiff,**

v.

**Moore Graphic Services, a division of Moore Business, Forms, Inc., Third–Party Defendant.**

No. 97–2530–V.

United States District Court, W.D. Tennessee, Western Division.

March 16, 1999.

Joseph D. Barton, Millington, TN, L. Daniel Johnson, Memphis, TN, for Starr Printing.

David B. Newman, New York City, for Air Jamaica.

Lisa A. Krupicka, Memphis, TN, for Moore Graphics.

ORDER GRANTING THIRD PARTY
DEFENDANT SUMMARY
JUDGMENT

VESCOVO, United States Magistrate Judge.

Plaintiff, Starr Printing Co., Inc. (Starr)[1], sued the defendant, Air Jamaica

---

1. Starr is a Tennessee corporation with its principal place of business in Memphis, Tennessee.

Vacations (AJV)[2], claiming AJV breached a contract between the two parties by failing to tender payment for travel brochures produced by Starr. AJV denied that any contract existed between Starr and AJV, asserted that the final produced brochures were of "poor quality," and claimed that it has been unable to verify how many of the brochures actually arrived at their intended destinations. Acting as a third-party plaintiff, AJV sued third-party defendant, Moore Graphic Services (Moore)[3] alleging breach of contract, a right of indemnification, fraud, and *respondeat superior* liability arising from the production of the abovementioned travel brochures. Before the court is the Motion for Summary Judgment filed by Moore.[4] Moore asserts that it is entitled to summary judgment as to each and every one of AJV's claims against it. Because AJV's damages are speculative and remote, Moore's motion for summary judgment is GRANTED. The court will nevertheless address each of the separate bases for summary judgment advanced by Moore.

### BACKGROUND AND UNDISPUTED FACTS

AJV markets travel packages to Caribbean destinations featuring a variety of accommodations and including airfare aboard Air Jamaica. In mid-March 1997, AJV distributed a purchase order requesting bids from printing firms to produce its 1997 summer travel brochure. On March 20, 1997, Moore responded to this request with an offer quoting prices and terms for an agreement to produce as few as 100,000 or as many as 250,000 brochures. This offer included a provision that applicable sales tax would be charged and requested that AJV indicate its acceptance by signing

the offer and returning it. On March 22, 1997, AJV returned this offer purportedly expressing acceptance but modifying some terms. Notably, AJV placed a handwritten notation stating "no tax" next to the requirement for payment of sales tax. AJV's response also indicated that it would advise Moore by March 24 whether it needed 200,000 or 250,000 brochures. Later, Moore sent another document to AJV which provided a new price quote for production of an increased quantity of 300,000 brochures. Except for the changes concerning the overall printing price, this proposal was identical to Moore's March 20 offer.[5] In response, on April 1, AJV delivered another purported acceptance of the offer to Moore but once again modified several terms including replacing the provision requiring AJV to pay sales tax with "Sales Tax Not Applicable Due to Shipping Out of Tennessee." At some point during this negotiating process between AJV and Moore, Moore contacted Starr about printing the brochures.

Approximately a week before the printing was to take place, Moore sent some printed samples to AJV. These samples arrived in a folder bearing Starr's name. On March 28, 1997, Moore informed Starr that it was putting the AJV job on hold and that if Starr decided to pursue the job it did so at its own risk. Moore sent a letter confirming this conversation to Starr. AJV was not a party to the conversation between Moore and Starr and was not sent a copy of the letter. Moore then sent a letter to AJV on April 11, 1997 explaining that Moore would not be able to perform the job producing travel brochures because of a dispute regarding pay-

---

2. AJV is a division of Air Jamaica Ltd. which is a limited liability company organized under Jamaican law having its principal place of business in Miami, Florida.

3. Moore is a division of Moore U.S.A., Inc., a Delaware corporation with its principal place of business in Lake Forest, Illinois.

4. The parties have consented to the trial of this matter before the undersigned United States Magistrate Judge.

5. In fact, although it would appear that this proposal must have been made subsequent to March 22, the second proposal was also dated March 20.

ment of the sales tax on the job. That letter stated in pertinent part:

> To eliminate this issue of sales tax, Moore has no other alternative but to release the job to our vendor, Starr–Toof, in Memphis, TN for the purpose of invoicing and collection. This will allow Air Jamaica Vacations to save the $14,000+ in sales tax.
>
> As much as Moore Graphics Services doesn't want to lose Air Jamaica Vacations as a client we must be fair with you concerning the collection of the sales tax.
>
> I do apologize for any inconveinence (sic) this might cause. Rick Martin of Starr–Toof will be in contact with you to wrap up the final details of the job. Starr–Toof will have complete responsibility.

(Ex.D to AJV's Mem. in Opp. to Moore's Mot. for S.J.) After communicating with AJV, Starr printed the brochures and demanded payment for its work from AJV. AJV refused to pay Starr and the present lawsuit was filed. Moore now contends that it is entitled to summary judgment on each and every one of AJV's third-party claims against it.

### DISCUSSION

**A. Choice of Law Determination**

 Because of the parties' varied geographic contacts, this court must make an initial choice-of-law determination in this matter. A federal court exercising its diversity jurisdiction must apply the choice of law rules of the state in which it is located. See Klaxon Co. v. Stentor Elec. Mfg., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In resolving contractual disputes in the absence of an enforceable choice of law provision, Tennessee adheres to the rule of lex loci contractus.

Thus, when the dispute involves questions concerning the validity of a contract, the court applies the law of the state where the contract was made. See Ohio Cas. Ins. Co. v. Travelers Indem. Co., 493 S.W.2d 465, 467 (Tenn.1973). In this case if a contract existed between AJV and Moore, it appears it was formed by the commencement of performance in Tennessee; thus, Tennessee law should govern all contract issues.[6]

 In resolving disputes sounding in tort, Tennessee has adopted the "most significant relationship" approach contained in the Restatement (Second) of Conflict of Laws (1971). See Hataway v. McKinley, 830 S.W.2d 53, 59 (Tenn.1992). The alleged fraudulent misrepresentation in this case is Moore's statement that the brochures were to be printed on "state of the art" equipment. Because the brochures were to be produced in Tennessee, it appears that Tennessee has the "most significant relationship" to this dispute and thus its law should govern.[7]

**B. Standard for Summary Judgment**

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir.1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir.1992) (per curiam). The party who moves for summary judgment has the burden of showing that there is no genuine issue of material fact remaining in the

---

**6.** Because the indemnification claim in this case is derivative of the breach of contract claim, Tennessee law shall govern it as well.

**7.** Tennessee's interest is further bolstered because Starr is based in Tennessee and has chosen this forum for resolving this dispute.

The only other states with an interest in this dispute would be Delaware, Florida, and Illinois—states in which parties are either incorporated or maintain their principal places of business.

case. *See LaPointe,* 8 F.3d at 378. This may be accomplished by convincing the court that the nonmoving party lacks evidence to support an essential element of its case. *See Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1389 (6th Cir.1993).

In response, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Co.,* 8 F.3d 335, 339–40 (6th Cir.1993). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In deciding a motion for summary judgment, "this court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir.1993) (quoting *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. Finally, a district court considering a motion for summary judgment may not weigh evidence or make credibility determina-

tions. *See Adams v. Metiva,* 31 F.3d 375, 378 (6th Cir.1994).

### C. *Breach of Contract*

Moore argues no contract was formed between AJV and Moore because AJV's response was not a valid acceptance of Moore's offer and amounted to a rejection. Moore also directs the court's attention to the text of its April 11 letter to AJV which states that Starr, not Moore, had "complete responsibility" for the job.

AJV insists that production of the brochures commenced prior to March 28 when Moore allegedly placed the job on hold, that Moore accepted AJV's counter-offer through its conduct, and that Moore breached its contract by failing to complete performance and/or by subcontracting with Starr. AJV maintains that it was never informed by Moore that the printing would be subcontracted to Starr and insists it would not have hired Moore had it been aware of that fact. AJV explains that it reasserted its unwillingness to have its job subcontracted when it received samples in a folder indicating that Starr may have been doing the work. AJV asserts that Moore explained Starr's involvement by stating that Moore was purchasing Starr,[8] and to the extent AJV eventually dealt with Starr, it did so strictly with Starr acting as Moore's appointed agent for "invoicing and collection." AJV also insists that the issue regarding "sales tax" had not been raised by Moore prior to the April 11 letter.

■ Under Tennessee law, an acceptance which does not mirror the offer will not form a contract.[9] *See Canton Cotton Mills v. Bowman Overall Co.,* 257 S.W. 398 (1924). Instead, under the "mirror image" rule the purported acceptance constitutes a rejection of the original offer and

---

8. It should be noted, however, that AJV has not included this alleged misrepresentation in its third-party complaint.

9. Although Tennessee has adopted provisions of the Uniform Commercial Code modifying

the "mirror image" rule for contracts involving the sale of goods, those provisions would not apply to this service contract for the production of brochures. *See* Tenn.Code Ann. § 47–2–207 (1996).

is a counter-offer which the original offeror is free to accept or reject. *See Union Realty Co. v. Moses,* 984 F.2d 715, 719 (6th Cir.1993) (applying Tennessee law). In the present case, the proposal from Moore to AJV was the original offer. Both of AJV's purported acceptances modified or deleted terms of the offer. As such, they were not effective to satisfy the "mirror image" rule and therefore constituted counter-offers.

A counter-offer can be accepted by conduct without doing any damage to the "mirror image" rule. *See Union Realty Co.,* 984 F.2d at 722 n. 6. Examining Moore's actions upon receipt of AJV's final counter-offer in the light most favorable to AJV, the court finds genuine issues of material fact exists to whether Moore accepted AJV's counter-offer by beginning production of the brochures thereby creating an enforceable contract. Although not dispositive of the question, it is relevant that Moore sent no reply to AJV expressing a rejection of AJV's most recent counter-offer. Even though the March 28 letter from Moore to Starr states that Moore placed the job on hold, that fact was not contemporaneously communicated to AJV. Furthermore, Moore's use of the term "job" in that letter could be viewed by the trier of fact as evidence that Moore and AJV had a contract. AJV was not made aware that anything was amiss until April 11. In fact, Moore's April 11 letter to AJV could be viewed by the trier of fact as further evidence of the existence of a contract between Moore and AJV. The letter explains that Moore will be releasing "the job" to Starr but only "for the purpose of invoicing and collection." Further, the letter refers to Moore's desire not to lose AJV as "a client."

In addition, Moore sent samples of the work to be performed to AJV prior to March 28; the trier of fact could find such conduct to be an indication that Moore had already undertaken performance under the contract. Moreover, contrasting sworn testimony in the record raises a genuine dispute as to whether production of the brochures had begun prior to the March 28 communication between Moore and Starr. Moore has submitted an affidavit from the President and C.E.O. of Starr which declares that production of the AJV brochure began on March 28, 1997. (Ronnie Martin Aff. ¶ 2.) However, the sworn testimony of James McCarthy, the former Vice President of Finance for Moore, states that because the brochures were on press by March 28 that would mean that the production of the job began prior to that date. (McCarthy Depo. at 58.)

The existence of genuine issues of material fact regarding whether Moore and AJV had entered into a contract would preclude the entry of summary judgment as to AJV's breach of contract claim were it not for the damage issue discussed below.

## D. *Indemnification*

Moore next contends that AJV is not entitled to indemnification from Moore under any set of circumstances because AJV's failure to pay Starr for the brochures did not result from any wrongdoing on the part of Moore, and therefore, Moore is entitled to summary judgment on AJV's indemnification claim. AJV argues that its indemnification claim should go forward because a disputed issue of material fact exists as to the nature of the relationship between Moore and Starr.

The concept of indemnification is based on the principle that a person should bear responsibility for his own wrongdoings. Indemnification is used to require the wrongdoer to satisfy legal obligations imposed on others that the wrongdoer should have paid or for which the wrongdoer is responsible. *See Houseboating Corp. v. Marshall,* 553 S.W.2d 588, 589 (Tenn.1977).

A right of indemnification can be either express or implied. *See Winter v. Smith,* 914 S.W.2d 527, 541 (Tenn.Ct.App. 1995). In Tennessee, an implied right of

indemnity will be imposed "when the obligation is a necessary element of the parties relationship." *Winter*, 914 S.W.2d at 542 (citing *Lusk v. Jim Walter Homes, Inc.*, 648 S.W.2d 935, 939 (Tenn.1983)). Tennessee also provides for implied indemnification "when justice and fairness demand that the burden of paying for the loss be shifted to the party whose fault or responsibility is qualitatively different from the other parties." *Id.* (citing *Velsicol Chem. Corp. v. Rowe*, 543 S.W.2d 337, 339 (Tenn.1976)). This latter source of the implied right of indemnification contemplates comparisons of the actions of joint tortfeasors. *See Cohen v. Noel*, 165 Tenn. 600, 56 S.W.2d 744, 746 (1933). Primarily, such a right would exist when one of the tortfeasors engaged in active negligence while the other tortfeasor's negligence was merely passive. *See id.* In certain circumstances, implied indemnification is available in a breach of contract action. *See Winter*, 914 S.W.2d at 542 ("In the absence of an express contract, an obligation to indemnify will be implied only if the party from who [sic] indemnification is sought breached a contract or engaged in some other related tortious conduct.") Nevertheless, "a relationship must exist where one party defends allegations it is constructively liable for the wrongdoing of another[, and] the party defending the claim of constructive liability must bear no fault for the negligent acts." *Morse/Diesel, Inc. v. Provident Life and Accident Ins. Co.*, Nos. 97–5899, 97–5926, 1998 WL 739886, at *5, 166 F.3d 1214 (6th Cir. Oct.8, 1998).

In this instance, AJV claims an implied right of indemnification against Moore for any amount that it might be liable to Starr as payment for printing of the travel brochures. AJV is not defending itself against allegations arising from the wrongful actions of Moore and for which Moore should be responsible. Instead, AJV is defending itself against allegations that it accepted a service provided by Starr and refused to pay for it. AJV's liability to Starr, if any, will arise either from breach of contract or from quantum meruit. Either way, however, those damages would not represent any amount that Moore should have originally paid to Starr. Rather, these are amounts AJV should have paid to Moore if a contract between AJV and Moore existed. In this situation, there is no indemnity right that is a necessary element of the parties' relationship. It is not a necessary element of Moore and AJV's relationship that Moore should have to pay Starr for the value of brochures AJV received. Therefore, as to AJV's claim for indemnification summary judgment in favor of Moore would be appropriate.

## E. *Fraud*

The only claim for fraudulent misrepresentation currently before this court involves Moore's statement to AJV that the brochures would be printed on "state of the art" equipment.[10] As the basis for its motion for summary judgment on the fraud claim, Moore argues that there is no evidence in the present record to show that Moore's representation that the printing would take place on "state of the art" equipment was false. AJV contends that a genuine issue of material fact exists as to whether Moore's "state of the art" assurance amounts to fraud. AJV insists that the presses upon which the brochures were printed were not "state of the art" and that Moore's statement was part of the inducement to enter into a contract with Moore.

10. AJV presently asserts that Moore made another fraudulent misrepresentation when it informed AJV of its intention to purchase Starr. However, AJV did not include that allegation in its third-party complaint originally or by way of amendment. Fed.R.Civ.P. 9(b) requires that for averments of fraud, "the circumstances constituting fraud ... shall be stated with particularity." Accordingly, the question of whether AJV can withstand Moore's motion for summary judgment as to the fraud allegations must be decided without consideration of Moore's alleged statement of intent to purchase Starr.

▌ In order to show that a fraudulent misrepresentation has occurred under Tennessee law, AJV must prove that Moore knowingly made an intentional misrepresentation relating to an existing or past fact, that AJV reasonably relied on the misrepresentation, and that AJV suffered damages as a result. *See Tschira v. Willingham*, 135 F.3d 1077, 1086 (6th Cir. 1998); *Hill v. John Banks Buick Inc.*, 875 S.W.2d 667, 670 (Tenn.Ct.App.1993). Such a claim may also be proven by showing "the concealment or nondisclosure of a known fact when there is a duty to disclose." *Justice v. Anderson Co.*, 955 S.W.2d 613, 616 (Tenn.Ct.App.1997).

Both parties support their respective positions by relying on the deposition of Jeffrey Pankey, AJV's production manager. Moore claims that Pankey admitted in his deposition that the printing machines were "state of the art." Furthermore, Moore contends "state of the art" does not have a specific, generally understood meaning.

▌ Upon review of the Pankey deposition and the rest of the record, the court finds that genuine issues of material fact remain as to whether this "state of the art" representation was fraudulent. The fact that Pankey may not have been able to paint the most lucid picture of his conception of "state of the art" does not prove that there is no generally understood industry definition of a "state of the art" printing press from one that is not. Moore did not submit any supporting affidavits stating that the printing press facilities used were indeed "state of the art." Nor, did it submit any supporting affidavits stating that there is no generally accepted industry-wide definition of a "state of the art" printing press. Further, specific concepts of "state of the art" printing apparatuses can be culled from Pankey's testimony. For example, Pankey describes specific expectations regarding lighting and the proximity of necessary computer equipment to be able to quickly "bump up a color." (Pankey Depo. at 48–

49.) A trier of fact should determine if Starr's presses were "state of the art."

Nor is it clear when viewing Pankey's deposition testimony in a light most favorable to AJV that Pankey himself admitted that the presses used to produce the brochures were "state of the art" as Moore insists. Moore emphasizes the following portion of Pankey's deposition:

> At that time I asked Ricky, I told him, I said, Rob told me you had state of the art equipment, how old are these presses. He told me that they were redone in '93, which means that they can say that they are state of the art because they are redone, and I asked him again what year they were, and from my recollection they were in the 70s, from what I recall.

(Pankey Depo. at 45.)

Moore wants the court to conclude from that portion of Pankey's testimony that Pankey admits that the presses are "state of the art" because they were redone in 1993. However, that portion of testimony is not necessarily limited to such an interpretation. Rather, Pankey's testimony can be viewed as merely a recapitulation of what Ricky told him. In short, the court finds that a genuine issue of material fact exists as to whether the printers were actually "state of the art." Thus, summary judgment on AJV's claim for fraud would not be appropriate if it were not for the damage issue discussed below.

### F. *Respondeat Superior*

Moore asserts that it is entitled to summary judgment on AJV's *respondeat superior* claim because no subcontracting relationship existed between Moore and Starr.

▌ The doctrine of *respondeat superior*, or vicarious liability, has long been entrenched in American jurisprudence. It is a doctrine whereby the principal is liable for the tortious acts of its agent to the extent such acts were performed in the course of the principal's business. *See Tennessee Farmers Mut. Ins. Co. v. Amer-*

*ican Mut. Liab. Ins. Co.,* 840 S.W.2d 933, 937 (Tenn.Ct.App.1992).

In this instance, AJV has not alleged that Starr committed any tortious acts; rather, AJV merely contends that Starr is not entitled to receive any payment because Starr and AJV had no contract. AJV's allegations concerning the tort of fraudulent misrepresentation are only leveled at Moore. AJV has alleged that Starr performed shoddy work as a defense to any potential liability AJV might have for not paying for the brochures, but that is an issue sounding in contract, not tort. The doctrine of *respondeat superior,* therefore, is inapplicable to this case, and Moore is entitled to summary judgment as to AJV's *respondeat superior* claim.

### G. *Damages*

Finally, Moore claims that it is entitled to summary judgment on all of AJV's claims because AJV's damages are wholly speculative. In its third party complaint, AJV seeks damages in general "in no event less than $1 million." The only theory of damages AJV has identified thus far is lost profits.

In order to recover lost profits, the profits must not be remote, uncertain, or speculative. *See Grantham & Mann, Inc. v. American Safety Prods., Inc.,* 831 F.2d 596, 601 (6th Cir.1987) (citing *American Bldgs. Co. v. DBH Attachments, Inc.,* 676 S.W.2d 558, 562–63 (Tenn.Ct.App. 1984)). If it is uncertain that defendant's breach caused loss of profits, lost profits will be denied. *Id.* (citing *Lawler v. Zapletal,* 679 S.W.2d 950, 953 (Tenn.Ct.App. 1984)). Or, if it is uncertain that plaintiff would have made a profit in the absence of the breach, lost profits will be denied. *See Morristown Lincoln Mercury Inc. v. Roy N. Lotspeich Publ's. Co.,* 42 Tenn.App. 92, 298 S.W.2d 788, 793 (1956). To obtain lost profits as an element of damages in a breach of contract suit, lost profits must be proved to a reasonable certainty to take

recovery out of the realm of speculation or conjecture. *See Burge Ice Mach. Co. v. Strother,* 197 Tenn. 391, 273 S.W.2d 479, 486 (1954); *Black v. Love & Amos Coal Co.,* 30 Tenn.App. 377, 206 S.W.2d 432, 435 (1947).

The only proof of damages AJV has come forward with in response to Moore's summary judgment motion is the deposition testimony of Mark Adams, President of AJV. Adams explained that AJV began business in the summer of 1995 without any brochures promoting its vacations. Brochures were first used in 1996. With the publication of brochures, AJV sold 27,000 trips for the 1996 summer vacation season and 7,000 trips for the 1996 winter vacation season. For the 1997 summer vacation season, the period in question in this lawsuit, AJV's sales remained constant at approximately 27,000 customers and for the 1997 winter vacation season increased to 8,000. According to Adams, AJV booked 42,000 passengers during the 1998 summer vacation season. Adams also testified that calls to AJV's reservations lines increased in the summer of 1997, but did not result in sales. Based on the above facts and figures, Adams projected that AJV should have experienced a 25% growth in summer 1997 sales, for an increase of 7,000 passengers which he calculated to equal $2.8 million in lost gross profits. It is undisputed that AJV did not make a profit in 1995, 1996, or 1997.

Other than Adams's opinion, there is no proof that the lack of projected increased sales in the summer of 1997 was caused by problems with the publication of the brochures. Adams was unable to identify any location that did not receive a brochure or any person who did not buy a vacation because of poor quality brochures. More importantly, Adams did not identify any actual lost sales or lost profits but only lost potential sales and lost potential gross profits. Although lost net profits are compensable, lost gross sales and lost gross profits are not compensable. *See Grant-*

*ham,* 831 F.2d at 601; *Joy Floral Co. v. South Cent. Bell Tel.,* 563 S.W.2d 190, 191 (Tenn.Ct.App.1977). Because there are many factors that affect lost profits, such as overhead, market, expenses, competition, and weather, no jury could find AJV lost profits based on the evidence of lost projected sales and lost gross profits per sale without engaging in pure speculation particularly when AJV had never before been profitable.

Once Moore came forward with proof that AJV lacked evidence to support a claim for damages, an essential element of all of its claims against Moore, it was incumbent upon AJV to counter with "significant probative evidence" of damages sufficient to withstand summary judgment. AJV has failed to do so. Therefore, Moore is entitled to summary judgment on all of AJV's claims.

### CONCLUSION

Accordingly, Moore's motion for summary judgment on AJV's third party claim is granted in its entirety.

IT IS SO ORDERED.