IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 1, 2017

## AMERICAN RECYCLING & MANUFACTURING CO., INC. v. RECYCLE SOLUTIONS, INC.

**Appeal from the Chancery Court for Shelby County**
**No. CH-11-1897-2     Arnold B. Goldin, Chancellor**

_____

### No. W2014-01907-COA-R3-CV

_____

This action involves a former employee's alleged misappropriation of confidential business information and improper interference with contractual and business relationships for the benefit of a competitor company. The employer filed suit against the employee and the competitor company, seeking damages for lost profits. The defendants moved for summary judgment, alleging, inter alia, that the employer could not prove causation or damages in support of any of its claims. The trial court granted summary judgment, finding that the proof submitted was insufficient to support a claim for lost profits. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S. and BRANDON O. GIBSON, J., joined.

Alan J. Knauf and Amy K. Kendall, Rochester, New York, and Gary E. Veazy, Memphis, Tennessee, for the appellant, American Recycling & Manufacturing Co., Inc.

Robert A. McLean, Memphis, Tennessee, for the appellee, Recycle Solutions, Inc.

### OPINION

### I.     BACKGROUND

American Recycling & Manufacturing Co., Inc. ("ARM") is a Tennessee corporation that shares common ownership with other corporations of the same name in New York, Indiana, and Pennsylvania. All four corporations operate in the recycling

industry by collecting used packaging materials, sorting it, repairing it, and then selling it to manufacturers for further use. For example, Exxon Mobil ("Exxon") used pallets and other items to ship rolls of polypropylene film to Bryce Corporation ("Bryce"), a manufacturer of flexible packaging used to contain potato chips or other food items. Bryce then used the polypropylene film but was left with the packaging materials used to ship the film. In turn, ARM retrieved the packaging materials from Bryce, repaired the materials, if needed, and sold the materials back to Exxon for further use, thereby completing the re-use cycle.

Bryce is commonly referred to in the recycling industry as a "Returner." Returners like Bryce generally recoup a rebate for undamaged packaging materials less freight cost, while others pay companies to retrieve the material or simply give it away. In this case, ARM had no obligation to sell the recycled materials to any one company and had numerous customers that purchased like materials. ARM generally held longstanding agreements with Returners that provided a set price list for common items and an agreed upon freight cost; however, ARM did not operate pursuant to a contract with its Returners that entitled ARM to the materials. Returners were free to recycle through other companies in the industry, thereby establishing the competitive nature of the industry that resulted in the action before this court.

In 2010, Recycle Solutions, Inc. ("RSI"), a Tennessee corporation also operating in the recycling industry, sought to develop a reverse logistics recycling program similar to ARM's. RSI recruited several of ARM's employees, including Derek Downing, James Ronesburg, and Paul Congilaro, to develop the program. While at ARM, Downing worked closely with the Returners and was responsible for processing and documenting rebates. As such, he was familiar with ARM's pricing, contact information for its customers, and the industry itself. Ronesburg worked in ARM's recycling facility, was familiar with the customers and Returners, and retained knowledge of the logistics of the re-use cycle and the way in which to manage the facility itself. Congilaro, a primary sales and marketing representative, worked at ARM's headquarters in New York and had unique access to confidential business information.

Downing and Ronesburg were subject to ARM's established policies and practices while employed; however, they were at-will employees and were not required to sign confidentiality agreements or covenants not to compete. Congilaro's employment with ARM was slightly more complicated. His employment was through Lamb, Inc. ("Lamb"), a company that executed a non-compete agreement that prohibited competition for a period of one year following employment.

RSI, with assistance from Downing and Congilaro, solicited business relationships with Returners previously held by ARM, including Bryce, ARM's primary source of

packaging material. It is undisputed that Downing provided RSI with a list of ARM's Returners and contact information. The record is also clear that the loss of ARM's relationship with Bryce and other Returners disrupted its ability to supply its customers, resulting in a loss of profits.

ARM filed a complaint against RSI and Downing on November 18, 2011,[1] and an amended complaint on August 8, 2013, alleging the following eight causes of action:

(1)     Misappropriation of Trade Secrets in violation of Tennessee Code Annotated section 47-25-1701;

(2)     Procurement of breach of contract in violation of Tennessee Code Annotated section 47-50-109;

(3)     Intentional interference with a business relationship;

(4)     Conversion;

(5)     Unjust enrichment;

(6)     Civil conspiracy;

(7)     Breach of contractual and common law duty of confidentiality; and

(8)     Breach of contractual and common law duty of loyalty.

Counts (1) through (6) were directed toward RSI and Downing, while Counts (7) and (8) were directed toward Downing as a result of work performed for RSI prior to his departure from ARM.[2] RSI denied wrongdoing, claiming, inter alia, that ARM's business model was not a trade secret, that Returners were not bound by contracts, and that any loss of business was caused by ARM's poor service and intentional failure to pay rebates owed to its Returners. RSI moved for summary judgment, alleging that ARM could not prove causation or damages in support of any of the alleged causes of action.

---

[1] Ronesburg was initially included as a party but was later dismissed from the action on May 24, 2013.

[2] ARM filed a separate complaint in New York in which it alleged claims concerning, inter alia, Congilaro's breach of contract.

The parties engaged in exhaustive discovery[3] and deposed numerous witnesses, including Maria Cowart, a purchasing manager employed by Bryce, and Joe Meindl, ARM's designated corporate representative. Ms. Cowart confirmed that Bryce did not hold a formal contract with ARM and that their relationship was governed by the verbal acceptance of a set price list for materials. She provided that the price list changed at times pursuant to agreement and that the amount of any rebate owed was computed according to the price list, less any freight cost. She stated that Bryce eventually became frustrated with ARM's rebate program because Bryce was not receiving timely payments.[4] She noted that Bryce also had issues with the pricing and the cost of freight and that she discussed these issues with Mr. Meindl, who then made a competitive bid for Bryce's continued business in April 2011. She provided that Bryce ultimately decided to work with RSI, beginning on June 6, 2011. She acknowledged that ARM's newly proposed pricing was higher but explained that RSI established a facility near Bryce, thereby eliminating the cost of freight from the rebate calculation.

Mr. Meindl testified concerning, inter alia, his preparation of a damages summary indicating ARM's lost profit of $120,364.01 in 2011; $310,122.96 in 2012, and $356,432.11 in 2013. These figures were based on a calculated profit of $396,628.49 for 2010. However, ARM's tax returns only reflected income of approximately $7,700 in 2010 and $543 in 2011. Mr. Meindl explained that the four corporations moved income around for favorable tax reporting purposes and that his damages summary was more indicative of the lost profit at issue because the damages claimed concerned profit realized only from the reverse logistics recycling program in Tennessee.

The case proceeded to a hearing on the motion for summary judgment, after which the court granted summary judgment in RSI's favor. The court provided a detailed analysis in support of its decision in which it ultimately found that the evidence of damages was "simply too speculative" and that there was not "a sufficient foundation upon which the Court can make a finding that ARM suffered the damages as has been alleged." The court explained that the "most basic flaw" evident from the record was that ARM failed to present "a basis on which it can fairly and reasonably assess damages."

The court noted the disparity between the claimed amount of damages and the company's reported income; the use of a cash basis accounting method for the damages summary versus the use of an accrual accounting method used for the company's books, tax returns, and financial statements; and the lack of proper documentation in support of

---

[3] This court has reviewed the voluminous record but will not recount every detail here.

[4] Other witnesses confirmed similar issues with the untimely payment of rebates. In turn, ARM claimed that Downing and Congilaro caused issues with the rebate program to frustrate the Returners and gain business for RSI.

the damages summary to establish that a proper cash basis accounting method was used to draft the damages summary. The court also provided that ARM failed to account for economic factors as a potential cause of the drop-off in business.[5] Further, the court noted that Mr. Meindl failed to quantify the net profit lost relative to each specific customer or Returner. Accordingly, as pertinent to this appeal, the court held that RSI was entitled to summary judgment on all claims.[6] This timely appeal followed.

## II. ISSUE

The sole issue on appeal is whether the court erred in granting summary judgment in favor of RSI.

## III. STANDARD OF REVIEW

The appropriate summary judgment standard to be applied is as follows:

> [W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense.

*Rye v. Women's Care Center of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). When a properly supported motion is made, "the nonmoving party 'may not rest upon the mere allegations or denials of [its] pleading,' but must respond, and by affidavits or one of the other means provided in [Rule 56 of the Tennessee Rules of Civil Procedure], 'set forth specific facts' at the summary judgment stage 'showing that there is a genuine issue for trial.'" *Id.* at 265 (quoting Tenn. R. Civ. P. 56.06). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

---

[5] Mr. Meindl submitted an affidavit in which he denied economic factors as a cause with the conclusory statement that ARM suffered lost profits as a "direct result of the actions of RSI." The court found that this conclusory statement could not be considered to create a triable issue when it was contrary to Mr. Meindl's previously submitted deposition testimony in which he evidenced a lack of awareness as to whether economic factors may have played a role in the loss of business.

[6] The court held that disputed issues of material fact remained concerning the claim for breach of duty of loyalty asserted against Downing, individually.

"We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness." *Rye*, 477 S.W.3d at 250 (citations omitted). "In doing so, we make a fresh determination of whether the requirements of [Rule 56] have been satisfied." *Id.* (citations omitted). We must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008).

## IV. DISCUSSION

ARM first notes that the existence of damages as a result of RSI's wrongful conduct was certain and that the proper measure of damages[7] was the expected net profits, minus the cost of the goods and expenses fairly attributable to the sale. ARM asserts that Mr. Meindl provided sufficient information upon which the court could award damages. ARM explained that neither the tax returns nor the financial statements contained the level of detail present in the damages summary in which Mr. Meindl obtained data concerning the quantity and price of every packaging component sold from 2010 through 2013 and then subtracted from that amount the rebate paid, the processing costs, and the freight costs, thereby yielding a figure that represented the net profit for each type of packaging sold. ARM requests reversal of the court's grant of summary judgment and referral of the matter to a special master on the issue of damages. RSI responds that the court did not err in granting summary judgment when the proof of lost profits was speculative.

The party seeking damages assumes the burden of proof as to those damages. *Waggoner Motors, Inc. v. Waverly Church of Christ*, 159 S.W.3d 42, 57 (Tenn. Ct. App. 2004); *Inman v. Union Planters Nat'l Bank*, 634 S.W.2d 270, 272 (Tenn. Ct. App. 1982). Damages cannot be based on mere conjecture or speculation. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 703 (Tenn. Ct. App. 1999). Uncertain, contingent, or speculative damages are unrecoverable. *Western Sizzlin, Inc. v. Harris*, 741 S.W.2d 334, 336 (Tenn. Ct. App. 1987) (quoting *Maple Manor Hotel, Inc. v. Metro. Gov't of Nashville & Davidson Cnty*, 543 S.W.2d 593, 599 (Tenn.Ct.App.1975)). An award for damages requires proof of damages within a reasonable degree of certainty. *Western Sizzlin*, 741 S.W.2d at 336 (citation omitted).

"[A]n injured party may recover lost anticipated profits when their nature and occurrence have been established with reasonable certainty." *Waggoner*, 159 S.W.3d 42,

---

[7] ARM further argues that the court failed to identify the proper measure of damages. The record belies this assertion as evidenced by the court's opinion. Indeed, the court even rejected ARM's late-filed attempt to consider an alternative measure of damages in which ARM requested an award of damages based upon RSI's "ill-gained" profits.

58 (Tenn. Ct. App. 2004) (citations omitted). "This 'reasonable certainty' standard applies to evidence regarding the existence of damages," not the "amount of damages." *Tennison Brothers v. Thomas*, No. W2016-00795-COA-R3-CV, 2017 WL 6403888, at *17-18 (Tenn. Ct. App. Dec. 15, 2017) (citing *Waggoner*, 159 S.W.3d at 58). "Once an injured party proves that it has been damaged, the amount of the damages need not be proved with certainty or mathematical precision." *Waggoner*, 159 S.W. 3d at 58 (citation omitted). "The amount of lost profits damages may be based upon estimates." *Id.*

The court and the parties focused mainly upon ARM's methodology in its calculation of damages. We believe the greater and determinative issue lies with ARM's failure to prove the existence of damages as a result of RSI's alleged wrongdoing. RSI certainly recruited ARM's employees and competed for ARM's longstanding business relationships, and ARM lost several key Returners, thereby interrupting its supply chain and resulting in lost profits. However, ARM did not possess contracts with its Returners and failed to even obligate itself to sell its materials to any particular customer. The record established that ARM lost business to a third competitor not at issue in this case and itself has solicited business from its competitors. Mr. Meindl admitted the competitive nature of the industry during his deposition and testified as follows:

Q:     How - - how did taking the prospective customer contact information for Klockner hurt you if you still have the program with Klockner? I don't understand?

A:     I'm not sure - - Well, couple of reasons. One, I'm not sure if they are doing business with Klockner. We have the program, but I'm not sure if they are doing the business. But I do know –

Q:     They being?

A:     RSI. But I do know that they have been calling and soliciting and pressuring – not pressuring, but trying to get Klockner, so I have no idea if they're doing business with them or not.

Q:     Okay. Well, I mean, Badger could be doing that, for all you know. Correct?

A:     Yes.

Q:     And any of your other competitors could be doing that, for all you know. Correct?

A:     Correct.

Q:     I mean, that's the nature of the business, very competitive, isn't it? You're always trying to get each other's [customers], aren't you?

A:     Yes.

Q:     Sure.

A:     Uh-huh.

Q:     That's – that's the American way, isn't it?

A:     Yes.

Moreover, ARM was given the opportunity to present a competing bid for Bryce's continued business *before* Bryce ended its longstanding relationship with ARM. We simply cannot hold that RSI's recruitment of employees who possessed knowledge of the industry can sustain a claim for damages when Bryce, ARM's most valued Returner, confirmed that the potential cost of freight was the determining factor in its decision to transfer its business after considering a competitive bid submitted by ARM. With all of the above considerations in mind, we conclude that the *existence* of damages *as a result of RSI's alleged wrongdoing* is simply too speculative given the competitive nature of the industry. *See Lawler v. Zapletal*, 679 S.W.2d 950, 953 (Tenn. Ct. App. 1984) (upholding the court's denial of damages when any damages suffered were not "the certain result of a wrong" committed by the plaintiff/counter-defendant). Accordingly, we affirm the court's grant of summary judgment.

## V.     CONCLUSION

This judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, American Recycling & Manufacturing Co., Inc.

_____
JOHN W. McCLARTY, JUDGE

- 8 -